JOHN SHAW, 2d, *vs.* HORACE D. HALL.

Essex. Nov. 8, 1882. — Jan. 9, 1883. C. ALLEN, COLBURN & HOLMES, JJ., absent.

In an action for the price of a horse alleged to have been purchased by the defendant through an agent, there was evidence that the horse at the time of the alleged sale had been in the possession of the defendant for some days, and a horse of the defendant, which was part of the consideration of the trade, was in the possession of the agent; that on the morning of the alleged sale the horse was severely injured while being driven by the defendant; that the agent before this had bought horses for the defendant; that, on the day of the alleged sale, the defendant wrote a letter to the plaintiff, dating it at an early hour in

the morning, in which he objected to the price asked, which letter there was evidence tending to show was in fact written after the horse was injured; and that, two days later, the defendant sent a telegram to the plaintiff, saying that he had disposed of his own horse and could not exchange, when in fact he had given the horse to the alleged agent. *Held*, that this evidence would not warrant a finding that the defendant had authorized the purchase of the horse by the alleged agent.

CONTRACT to recover the price of a horse alleged to have been purchased by the defendant through one Golden. Trial in the Superior Court, before *Wilkinson*, J., who ruled, upon the plaintiff's evidence, that the jury would not be authorized in finding that Golden had any original authority to buy the horse for the defendant, or that the defendant had so far ratified any unauthorized act as to be bound thereby; and directed a verdict for the defendant. The plaintiff alleged exceptions. The nature of the evidence appears in the opinion.

*S. B. Ives, Jr. & R. E. Harmon*, for the plaintiff.

*B. F. Hayes*, for the defendant.

DEVENS, J. At the trial, there was testimony that one Golden, assuming to act as agent for the defendant, had purchased the horse of the plaintiff; but the learned judge who presided was of opinion that there was no evidence of the authority of Golden thus to act, and therefore nothing to be submitted to the jury. We are to consider, therefore, not the weight of the evidence, but whether any evidence appeared which would have justified the finding that such authority existed.

The horse was in the possession of the defendant, and had been so for ten days, when Golden made the trade testified to by the plaintiff, while the mare of the defendant, which was to form a part of the consideration of the trade, was in that of Golden. On the morning of the day of the alleged trade, which was Monday, January 17, 1881, the horse was severely injured while being driven by the defendant.

The evidence that Golden had before this time bought horses for the defendant, and his statement that, whenever the defendant desired a horse, he, Golden, bought it for him, did not show any general agency on his part, and was entirely consistent with the defendant's claim that any trade made by Golden was subject to his approval. It was not, therefore, important upon the

disputed question of Golden's agency to make on behalf of the defendant an unconditional trade.

The conduct of the defendant after the alleged trade is deemed by the plaintiff to afford evidence that he had authorized an unconditional trade, as the plaintiff testified it had been made by Golden. He wrote a letter, purporting to be written upon the same day and to be dated at 8 A. M., in which he objected to the price asked by the plaintiff. The evidence as to the time when this was first seen, and when it was received by the plaintiff, would have justified the jury in believing that it was in fact written after the defendant had been informed of a trade, whatever were its terms, and after the horse was actually hurt; and that it was a fabrication intended to appear to have been written before the horse was hurt. The telegram sent by the defendant, assigning as a reason for not trading that he had exchanged his own horse (the mare) so that he could not, when in fact he had given it away to Golden, as it would appear after the alleged trade and after the injury to the horse, justified a belief that he had thus intentionally provided himself with a reason for not carrying out that which he had agreed to do, and that he had secured the support of Golden therein by a valuable gift. But the fabrication of the letter, the false impression intended to be conveyed thereby, and the gift unexplained to Golden, while important in controlling the testimony given by himself and Golden, and as tending to show dishonest conduct and dishonest purposes on his part, do not afford affirmative evidence of an agency on the part of Golden, nor make out for the plaintiff this part of his case, on which it was essential he should offer evidence.

The plaintiff further contends, that, as the horse was in the defendant's possession from five to ten days and the mare in the possession of Golden the latter portion of the time, it might be fairly inferred that the trade had taken place; and the jury were not obliged to believe the explanations offered by witnesses whom they deemed discredited. A jury may without doubt believe that a certain state of facts exists, and that a certain inference may be fairly drawn therefrom, and may refuse to believe the explanations offered, even if the whole evidence comes from the same witnesses. This is only to say that they

may believe some portions of the testimony, and reject others, as they respectively commend themselves to their judgment. But the plaintiff in the present case did not at the trial contend that the change in possession of the horses was evidence of a sale at that time. He relied solely, so far as the case shows, upon the bargain made between himself and Golden on January 17, some days thereafter, and, as Golden acted on behalf of another, it was for him to show Golden's authority.

We are therefore of opinion that the presiding judge correctly ruled that, upon this point, there was not evidence sufficient to be submitted to the jury.                    *Judgment on the verdict.*