MICHAEL LONERGAN *vs.* FRANK H. PECK.

Suffolk.   Nov. 15, 1883. — Jan. 22, 1884.   C. ALLEN & HOLMES, JJ.,
absent.

An auditor's report, though *prima facie* evidence, does not change the burden of proof.

At the trial of an action against a broker to recover money paid to him for the purchase of shares of stock on a margin, the plaintiff contended that no purchases were in fact made, and the defendant contended that the money was expended in buying shares of stock which were sold at a loss. The plaintiff put in evidence the report of an auditor, who found in favor of the defendant, and called the defendant as a witness, who testified that the purchases and sales were made, but was unable to tell of whom he bought or to whom he sold. *Held,* that the burden of proof was on the defendant to show that the transactions testified to were real; and that it could not be ruled, as matter of law, that the auditor's report was not controlled by the evidence.

CONTRACT for money had and received, with a count on an account annexed. The bill of particulars annexed to the first count and the account annexed were the same, and consisted of a large number of items, amounting in the aggregate to the sum of $127,949.24. The credit side of the account amounted to $115,770, leaving a balance due the plaintiff of $12,179.24. Answer: 1. A general denial. 2. Payment. The defendant also filed a declaration in set-off, containing nearly two hundred items, and amounting to $209,301.66. The case was referred to an auditor, whose report was in substance as follows:

In March, 1879, the plaintiff employed the defendant, who is a stockbroker and banker in Boston, to purchase for him fifteen shares of stock of the Missouri, Kansas, and Texas Railroad Company, and from March 13, 1879, until November 21 of the same year, the plaintiff gave the defendant numerous orders to buy and sell stocks and bonds of various kinds. The business was conducted mostly by written orders given by the plaintiff, and written memoranda of bought and sold notes rendered by the defendant; the defendant also rendered the plaintiff monthly statements of account.

The bonds and certificates of stock were not delivered to the plaintiff, or demanded or paid for by him, but the bonds and stocks were bought, sold, and carried on margins, the plaintiff

from time to time making deposits of cash, and the defendant advancing, or procuring to be advanced, money upon the bonds and stocks, on which advances interest was charged.

The plaintiff's declaration correctly alleges the items of cash deposited by him, and also such of the transactions as resulted in a profit to the plaintiff. The defendant's declaration in set-off correctly alleges the defendant's side of the account.

Many of the bonds and stocks could not be purchased in Boston, but could only be bought and sold in New York, and were ordered and sold by the defendant in New York through brokers there.

After the aforesaid transactions closed, on or about November 26, 1879, the parties met and adjusted the balance which then appeared to be due the defendant, by the plaintiff giving his promissory note to the defendant for the sum of $284, which is declared upon in the defendant's declaration in set-off.

Some of the aforesaid transactions resulted in a loss, and some in a profit, to the plaintiff.

The plaintiff seeks to recover the items of cash deposited by him, and the profit upon such of the transactions as exhibited a profit to him, and claims to repudiate the items of the mutual account which exhibit a loss to him, upon the alleged ground that all the accounts rendered by the defendant of the purchase and sale of the bonds and stock were fictitious, and that the defendant did not buy or sell the bonds and stocks reported by him, and that these facts were unknown to the plaintiff at the time he gave the aforesaid note.

" I find that the defendant did buy and sell the bonds and stocks ordered by the plaintiff, and report that the plaintiff is not entitled to recover any sum, but the defendant is entitled to recover upon his declaration in set-off the amount of the note therein alleged, viz. $284, and interest thereon from the date of the writ."

At the trial in the Superior Court, before *Colburn*, J., the plaintiff put in evidence the auditor's report. The plaintiff also called the defendant as a witness in his behalf.

The defendant contended, and asked the judge to rule, that there was no testimony to control the auditor's report, which ruling the judge declined to give.

The plaintiff contended that the defendant had not made all the purchases and sales on account of the plaintiff which were set forth in his books and in his accounts, as rendered to the plaintiff, though the plaintiff was unable to state which purchases and sales he admitted to have actually been made. But he further contended that he could recover the amount claimed in his declaration, because the defendant, having rendered an account of the purchases and sales as therein set forth, and having testified that they were actually made, the plaintiff was entitled to treat them as actual transactions, and the defendant was estopped to deny them, the plaintiff repudiating the other transactions shown on the defendant's accounts, and testified to by him, on which there were losses.

The judge instructed the jury, that, if the defendant made the purchases and sales as stated in his accounts, he was entitled to recover the amount of the note set forth in his declaration in set-off; but that if he made none of such purchases and sales, the plaintiff could recover the amount of his cash payments to the defendant, which it was agreed was about $2500, with interest from the date of the writ, and that, if the defendant made any purchases or sales for the plaintiff, the profit or loss thereon was to be added to or subtracted from the amount of the cash payments, as the case might be.

The jury returned a verdict for the plaintiff in the sum of $2699.59; and the defendant alleged exceptions to the refusal of the judge to rule that there was no testimony to control the auditor's report. The nature of the evidence appears in the opinion.

*R. M. Morse, Jr.*, for the defendant.

*C. B. Hibbard*, for the plaintiff.

DEVENS, J. The question here is not as to the weight of the evidence, but whether there was any evidence sufficient to be submitted to the jury. The error in the contention of the defendant is, that he treats the affirmative of the case and the burden of proof, in the posture in which it was when submitted to the jury, as on the plaintiff.

There was no dispute that the plaintiff had deposited with the defendant certain moneys, to be employed in the purchase and sale of stocks and bonds. He contended that all the purchases

and sales reported to have been made were fictitious, but he sought to recover of the defendant the profits which appeared to have been made, and the balances apparently due on account of a portion of these alleged fictitious transactions; but the court instructed the jury, that, if they were fictitious, he could recover for no part of them, but only his cash payments and interest thereon. The delivery of the moneys being undisputed, the burden of proof was on the defendant to show that he had honestly made transactions in the purchase and sale of stocks as ordered, and thus that he was not responsible for the moneys of the plaintiff, as the losses in them, according to his account, exceeded the moneys deposited and the gains by the sum of $284. The case had been referred to an auditor, whose report was favorable to the defendant. This report was *prima facie* evidence for the defendant, but it did not change the burden of proof, which was still on him to show that he did purchase and sell the bonds and stocks as ordered by the plaintiff. *Morgan* v. *Morse*, 13 Gray, 150. An affirmative proposition is certainly not to be established without some testimony in its support.

If one who has the burden of proof calls the opposing party to testify to a contract, the existence of which he asserts, the denial of such party, even if disbelieved, would not affirmatively prove that which his testimony negatives. *Markey* v. *Mutual Benefit Ins. Co.* 103 Mass. 78. *Proctor* v. *Whitcomb*, 134 Mass. 428. If we take the converse of such a case, and assume that the party having the burden of proof has called a witness who is disbelieved, or whose testimony is controlled, it is obvious that he has not established that which he undertook, even if his positive evidence may have been met by negative evidence only.

In *Shaw* v. *Hall*, 134 Mass. 103, the plaintiff sought to show that one Golden, with whom he had made the transaction which was in controversy, was the agent of the defendant. It was held that the fabrication of a letter, wrongly dated to convey a false impression of a telegram assigning a false reason for not completing the contract, and a large gift unexplained to Golden, did not afford affirmative evidence of the agency of Golden, or make out that part of the plaintiff's case which was there essential. It was, however, recognized that such evidence would

be of great importance in controlling the testimony of the defendant and of Golden. Had it been necessary for the defendant to establish that Golden was not his agent, such evidence would have been relevant to the issue, and might have been sufficient to prevent the defendant from maintaining it.

In an action for labor and services rendered, if the auditor had reported that such labor and services were rendered at a particular time and place, the evidence afforded by the report would be met, and, if sufficient in weight and accuracy, controlled, by the testimony of witnesses who were present at the time and place stated, and who would testify that no such labor and services were rendered.

Under the ruling of the court, as the plaintiff could not recover for the profit of any particular transactions if they were fictitious, all that was left for consideration was whether the transactions were as ordered by the plaintiff. The receipt of the moneys being admitted or proved, it was for the defendant to show this. Upon this point, the auditor's report was in favor of the defendant; but this could be met by showing conduct inconsistent with such a finding on the part of the defendant, and its effect would be thereby diminished or destroyed. It cannot be said that it was not thus met, when it was shown by the defendant's own testimony that one transaction at least consisted of a transfer of his own stocks by the defendant, and not a purchase, and when in all of seventy instances, although he testified that the transactions took place, he failed to show where or of whom he bought or to whom he sold, or to develop any circumstances which might make it possible to investigate his transactions, if they had an actual existence.

*Exceptions overruled.*