SELDEN F. GREENE vs. HAROLD D. COREY & others.

Middlesex.     November 22, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Practice, Civil*, Auditor's report, Conduct of trial: order of evidence, requests and rulings.
     *Contract*, Implied in law, Performance and breach. *Evidence*, Presumptions and
     burden of proof, Opinion: experts. *Stockbroker*. *Fraud*.

Where the report of an auditor to whom an action at law was referred contains cer-
     tain paragraphs setting out merely a statement of rulings of law which one of
     the parties had asked him to make and his rulings thereon, it is proper for the
     judge presiding at the trial of the case when the report is offered in evidence to
     exclude such paragraphs from the jury, since they are not strictly to be regarded
     as parts of the report, not containing any findings of fact and not being evidence
     for the jury.
Where the report of an auditor containing an erroneous ruling of law has been ad-
     mitted in evidence subject to an exception by the defendant, the defendant is not
     entitled at the close of the evidence to have the presiding judge rule that " the jury
     must eliminate any consideration of the auditor's report because of his application
     of an erroneous rule of law," since the proper way to correct a mistake made by
     the auditor on a question of law is by instructions of the judge to the jury.
In an action of contract against a stockbroker by a customer, the declaration was
     in two counts, the first count containing allegations in substance that the plain-
     tiff gave to the defendant at various times orders to buy and sell stocks for him
     upon margin and placed in the defendant's hands various sums of money as se-
     curity for the defendant in connection with such orders, that the defendant
     agreed to carry out such orders and reported in each instance to the plaintiff that
     he had done so by an actual purchase or sale, that the defendant did not carry
     out his orders by actual purchases and sales, and therefore that he owed the
     plaintiff the sums so paid to him. The second count was for money had and
     received by the defendant to the plaintiff's use. *Held*, that, after the plaintiff
     had proved the payments to and the acceptance by the defendant of the sums
     of money for the purpose alleged, the burden was on the defendant to show that
     the money had been used in the manner authorized by the agreement with the
     plaintiff.
In an action of contract against a stockbroker by a customer, in which the plaintiff
     sought to have repaid to him sums of money which he alleged that he had paid to
     the defendant for use in making actual purchases and sales of shares of stock,
     the defendant relied upon certain instruments signed under seal by the plaintiff
     and purporting to release and discharge the defendant from such liability. The
     plaintiff's contention was that the defendant had procured the instruments from
     him because he relied upon false representations of the defendant that purchases
     and sales of stock actually had been made. At the trial of the case, after a re-
     port of an auditor to whom the case had been referred, which was favorable to
     the plaintiff on that issue, had been offered in evidence by the plaintiff, the plain-
     tiff testified, and early in his direct examination was asked what knowledge he
     had with regard to the defendant's purchasing stock at the time he signed the

instrument of release, and answered that he " did not know anything about it." He then was asked " What was your intention ? " and answered " My intention was for " the defendant " to purchase them." *Held*, that the evidence was admissible as tending to show the materiality of the alleged false representations upon which the plaintiff relied to avoid the releases, and that the regulation of the order in which the evidence should be admitted was within the discretion of the presiding judge.

In an action of contract against a stockbroker by a customer, the declaration was in two counts, the first count containing allegations in substance that the plaintiff gave to the defendant at various times orders to buy and sell stocks for him upon margin and placed in the defendant's hands various sums of money as security for the defendant in connection with such orders, that the defendant agreed to carry out such orders and reported in each instance to the plaintiff that he had done so by an actual purchase or sale, that the defendant did not carry out the orders by actual purchases and sales, and therefore that he owed the plaintiff the sums so paid to him. The second count was for money had and received by the defendant to the plaintiff's use. The plaintiff, by cross-interrogatories in a deposition of a member of a firm who executed the defendant's orders upon a stock exchange, asked for the details as to what was done by the deponent as to each order of the plaintiff to the defendant. The deponent answered in substance that because of the extent of the details asked for and the nature and extent of his firm's business he was unable in the time allowed him to answer the questions as asked. *Held*, that the cross-interrogatories and the answers thereto were competent upon the issue whether the purchases and sales in question actually had been made and whether shares of stock purchased were ready and available to be delivered to the plaintiff through the defendant if he paid the balance due from him and called for by the certificates.

It is for the judge who presides at the trial of an action where a question of the law of another State is in issue to decide whether a witness offered as an expert on such law is qualified as such. In the present case, in which the witness testified in direct examination that he had been a member of the bar of this Commonwealth for seven and' a half years and that he had made a special study of the subject as to which his testimony was sought, and in cross-examination testified that he was not a member of the bar of the State whose law was in question, never had tried a case there, first had looked up the law of the other State on the subjects in question three and a half years before, had spent, at different times, enough time to amount to a day and a half in investigating the law with respect to the case on trial, and that he did not assume to be an expert on the law of the other State in general, but that he thought that he knew that State's law on the questions at issue. The presiding judge allowed the witness to testify as an expert. *Held*, that the action of the trial judge could not be said to have been clearly wrong. ◦

In an action against a stockbroker by a customer for margins paid under an agreement by the stockbroker to purchase shares of stock in accordance with the customer's orders, the customer alleging that the stockbroker did not carry out his orders by actual purchases, it is no defense for the stockbroker to prove that the shares of stock which the customer ordered him to purchase were for sale on a stock exchange of another city, that he transmitted the orders to a correspondent upon that exchange, who executed them and thereafter had under his immediate control certificates of stock of the description bought by the customer in greater number and amount than the customer was carrying with the defendant, which certificates he was in a position to deliver immediately upon demand and pay-

ment of the price, unless it also is proved that other customers of the correspondent can have no claim upon the shares so held by them; for, in order to make an adequate defense under such circumstances, the defendant must prove that the correspondent had under his control, free from the just demands of other customers and available for delivery to the plaintiff, the shares of stock of which upon payment the plaintiff was entitled to demand delivery. Following *Fiske* v. *Doucette*, 206 Mass. 275.

In an action against a stockbroker by a customer for margins paid under an agreement by the stockbroker to purchase shares of stock in accordance with the customer's orders, the customer alleging that the stockbroker did not carry out his orders by actual purchases, it is not a sufficient defense for the defendant to prove that in good faith he transmitted the plaintiff's orders to reputable correspondents upon the stock exchange of a city where they could be carried out and paid the demanded price for their due execution and obtained a valid contractual obligation with such correspondents, if it does not also appear that the purchases were made as ordered by the plaintiff, the defendant being unable thus to shift upon another the responsibility which he had assumed by his contract with the plaintiff.

In an action of contract against a stockbroker by a customer, the declaration was in two counts, the first count containing allegations in substance that the plaintiff gave to the defendant at various times orders to buy and sell stocks for him upon margin and placed in the defendant's hands various sums of money as security for the defendant in connection with such orders, that the defendant agreed to carry out such orders and reported in each instance to the plaintiff that he had done so by actual purchase or sale, that the defendant did not carry out the orders by actual purchases and sales, and therefore that he owed the plaintiff the sums so paid to him. The second count was for money had and received by the defendant to the plaintiff's use. The defendant asked the presiding judge to rule as follows: If the plaintiff understood that the contractual relation between him and the defendant was one by which the defendant agreed to execute all the plaintiff's orders by taking up certificates in each case and putting them in his name and holding the specific paper, and if the defendant understood the contractual relation to be fulfilled on his part by wiring such orders to a correspondent upon a stock exchange where the stocks ordered by the plaintiff were dealt in for execution by purchase on the exchange, without taking up any certificates or putting any in the plaintiff's name, their minds never met and there never was any contract between them. *Held*, that the ruling could not be given, because, if the minds of the parties did not meet and there was no agreement between them, the defendant was not justified at all in using the plaintiff's money and must account to him for it.

In an action of contract against a stockbroker by a customer, in which the plaintiff sought to have repaid to him sums of money which he alleged that he had paid to the defendant for use in making actual purchases and sales of shares of stock, the defendant relied upon certain instruments signed under seal by the plaintiff, and purporting to release and discharge the defendant from such liability. The plaintiff's contention was that the defendant had procured his execution of the instruments by false representations. There was evidence tending to show that such an instrument, prepared for the plaintiff's signature, was sent by the defendant to the plaintiff each month with a statement apparently setting forth transactions in accordance with the plaintiff's orders and involving actual purchases and sales by the defendant in the plaintiff's behalf, that the defendant had not made such actual purchases and sales but intended that the plaintiff

should think that he had and that the plaintiff, relying on such representations, should sign the instruments, that the plaintiff believed the transactions set forth in the account to be real as there shown and, relying thereon, signed the instruments. *Held,* that there was evidence for the jury on the question whether the instruments were procured by false and fraudulent representations of the defendant, and that it could not be ruled as matter of law that the releases contained in the instruments were binding on the plaintiff.

CONTRACT against the members of a copartnership doing business as stockbrokers under the name of Corey, Milliken and Company. Writ dated July 7, 1909.

The declaration contained two counts. The first count alleged that the defendants held themselves out as carrying on the business of buying and selling stocks and other securities as brokers on orders from customers; that the plaintiff gave them at various times orders to buy and sell stocks on his account upon margin, and that between March 4, 1907, and October 7, 1908, he placed in their hands as security in connection with such orders sums of money amounting to $4,983.01 and a certain bond alleged by him to be worth $1,025; that the defendants agreed to carry out such orders and reported to the plaintiff in each instance that they had executed them by purchase and sale; that the defendants did not actually purchase or sell according to his orders, and therefore that they owed the plaintiff the sums of money and the value of the bond placed in their hands for margins, amounting to $6,008.01. The second count was for the same sum as money received by the defendants to the plaintiff's use.

The answer set up a general denial, payment, accord and satisfaction and an account stated, release, and full performance by the defendants of their contract with the plaintiff.

The case was referred to Frank W. Kaan, Esquire, as auditor. After the filing of his first report, the case was recommitted to him for further report upon questions not now material.

The case was tried in the Superior Court before *Wait,* J.

After introducing and reading the auditor's reports, excepting those parts which were excluded as stated in the opinion, the plaintiff testified, and in the early part of his direct examination the following questions and answers were admitted, subject to exceptions by the defendant: " Q. Tell us what knowledge you had, doctor, with regard to the defendants purchasing stock at the time you signed these receipts. A. I did not know any-

thing about it. — Q. What was your intention? A. My intention was for them to purchase them." The following question and answer then were admitted without objection: " Q. Did you receive any notification from them that they had not purchased them? A. No."

The Leavitt mentioned in the opinion was a member of the firm of Leavitt and Grant, New York stockbrokers and members of the Consolidated Stock Exchange of New York. They were correspondents of the defendants. Interrogatories in writing were propounded by the defendants for the taking of Leavitt's deposition. The fourteenth interrogatory, referred to in the opinion, was as follows: " 14. State whether or not you were in all cases able and ready to deliver any certificates bought on account of orders received directly or indirectly through Corey, Milliken & Co. or F. L. Milliken & Co. on receipt of the price thereof." The plaintiff filed in writing the following objection to the interrogatory: " The plaintiff objects to the fourteenth interrogatory for the reason that it is leading and calls for a conclusion on the part of the witness." Leavitt answered the interrogatory, " Yes." The interrogatory and answer were excluded by the presiding judge.

The fifteenth, sixteenth and seventeenth cross-interrogatories to Leavitt sought detailed statements as to the source from which the deponent's firm purchased certain shares of stock and as to what disposition was made of them and the certificates representing them after they were purchased, cross-interrogatory seventeen asking the deponent, as to each of fifty-five stock transactions, " kindly make answer . . . with regard to each stock in reference (a) from whom each certificate was received, (b) number of same, (c) name in which it stood, (d) disposition of same, (e) date of its sale, (f) address of person to whom sold, (g) price at which sold, (h) to whom and when delivered, (i) all books and memoranda assisting you in answering these interrogatories to be annexed as exhibits." The answers were, as to one transaction, that all that the deponent could say was that on the day named in the question his firm purchased shares of the number and description set out in the question from a certain firm, and that on the same day his firm ": bought and sold thousands of shares of " the described stock " for the defendants and it is impossible for us to say when the particular twenty shares just de-

scribed were sold by them;" that "a large portion of deponent's time and of the time of his partner and bookkeepers has been taken up in collecting the information embraced in the interrogatories and cross-interrogatories answered, which cross-interrogatories were only received by deponent on Tuesday last and it will be utterly impossible to answer many of the questions embraced in those two cross-interrogatories [the sixteenth and seventeenth] for the reasons already stated, and others for the reason that it would require a large force of clerks and an interruption of the business of Leavitt & Grant to a very serious and damaging extent."

Stephen S. FitzGerald, Esquire, was offered as an expert on certain matters of New York law relating to stockbrokers. In the examination with regard to his qualifications, he stated that he had been a member of the bar for seven and a half years and had made an examination of the law of New York with reference to brokers and their customs. On cross-examination, he stated in substance that he was not a member of the New York bar, had never tried a case in the State of New York, and first had occasion to look up the law on the subject of stockbrokers about three and a half years before in connection with another case; that he first gave some attention to the New York law in connection with this case shortly after the auditor's report was filed; that he should say that the total time spent in examination of the New York law with reference to this case was a day or a day and a half, spent at different times; that he did not claim to be an expert on New York law as a general proposition, but that he thought he knew what the law was in New York about stockbrokers and that he had some notes in regard to New York cases.

The presiding judge allowed Mr. FitzGerald to testify as an expert, subject to an exception by the defendants.

With regard to the releases, there was evidence as follows: Accompanying accounts sent monthly by the defendants to the plaintiff and apparently stating actual transactions in shares of stock, there were mailed to the plaintiff documents of the following form which he signed and returned to the defendants:

"Boston, Mass., 190

"Received of Corey, Milliken & Co. statement of account with them, which account is correct. In consideration thereof and

of one dollar and other considerations hereby acknowledged, I hereby release and discharge said Corey, Milliken & Co. from all causes of action and claims to this date, excepting however, the claim for the balance of assets in their possession according to said account June 1st, 1907.

　　　　　　　　　　　　　　　　" S. F. Greene　(Seal)

" Please date, sign and return to
　　Corey, Milliken & Co.,
in enclosed stamped addressed
　　　　　envelope."

Accompanying each such document was a letter reading as follows:

" Enclosed please find statement of your account. Owing to the large number of accounts on our books it is impossible for us, personally to verify every statement of our clients, and, while our clerical force endeavor to exercise the utmost care, mistakes will occasionally happen, and we wish you would kindly examine the enclosed statement, and if found to be correct please date and sign the receipt below and return to us. If incorrect, notify us immediately that we may rectify any errors.

" Thanking you for your valued orders, we remain,

　　　　　　　　　　" Yours very truly,

　　　　　　　　　　　　　" Corey, Milliken & Co.

" The receipt below is a check upon our bookkeeping department and in the future will be attached to every statement. Your prompt attention will greatly oblige."

Other facts are stated in the opinion.

At the close of the evidence, the defendants asked the presiding judge to rule as follows:

" 7. In a suit by a non-resident customer of a Boston broker against a Boston broker seeking to recover money deposited as margin for a running account in New York stocks, if it appears that the orders of the customer have been duly transmitted to a New York correspondent, who has duly executed such orders by purchase and sale of the stocks in question upon the floor of the stock exchange and ever thereafter, as long as the account of the customer with the Boston broker remains open, has under his immediate control

certificates of stock of the description bought by the customer in greater number and amount than the said customer is carrying with the Boston broker, which said certificates he is in a position to deliver immediately upon demand and payment of the price, it is immaterial whether the said New York broker has certificates under his immediate control equal to the possible claims upon him by all his customers upon outstanding purchases and sales of those particular stocks or not.

" 8. The ordinary contractual relation between the Boston broker and his customer buying New York stocks upon margin does not compel the broker to prove that his New York correspondent from whom he buys such stock, during all of the time that the contractual claim of the customer of the Boston broker against the Boston broker is open, has stock under his immediate control, applicable to the individual account of the Boston customer and to an amount equal to all his contractual liabilities upon that particular stock under penalty of liability to the full amount of margin deposited by the customer, if such proof is not forthcoming.

" 9. If the defendants in good faith transmitted the plaintiff's orders to reputable New York correspondents and paid the demanded price for due execution thereon and obtained a valid contractual obligation of such correspondents thereunder, they fulfilled their duty to the plaintiff in the premises.

" 10. If the plaintiff understood the contractual relation between him and the defendants was one by which they agreed to execute all his orders by taking up certificates in each case and putting them in his name and holding the specific paper, and if the defendants understood the contractual relation to be fulfilled on their part by wiring such orders to New York correspondents for execution by purchase on the exchange, without taking up any certificates or putting any in the plaintiff's name, their minds never met and there never was any contract between them.

" 11. If a Boston broker in response to orders for New York stock received from customers duly buys such stocks from his New York correspondent, who duly purchases them upon the floor of the stock exchange, and if the broker therefore has an open contractual claim upon such New York broker for such

stocks until such time as the said stocks may be sold under the orders of the Boston broker's customer, he has fulfilled the obligation to buy and carry.

"12. The purchase and sale of securities through the clearing house of the stock exchange of New York, with a delivery only of such balance as may result from the sum total of the day's transactions, is a purchase and sale sufficient to satisfy the obligation of the Boston broker buying New York stock in New York upon margin for his customer under the relation implied by law.

"13. It is not in any way inconsistent with the contractual obligation between a Boston broker and his customer buying New York stocks on margin in New York for the Boston broker to wire the several orders to his New York correspondent in his own name and to carry an open account for such specific orders with New York brokers in the name of the Boston broker without any disclosure of the name of the Boston customer, the Boston broker furnishing the margin as required by the New York broker on account of the sum total of his orders, paying the New York broker the same commission and being treated like any other customer buying and selling on margin, except with regard to rate of interest and commission, although there is no specific payment to the said New York brokers on account of the specific purchase of the Boston customer and although the Boston broker does not actually receive from or deliver to any of the New York brokers certificates for the shares bought and sold upon the order of the Boston customer, except when such certificates are called for by the customer and paid for in full.

"14. When a broker purchases New York stocks upon general account from a New York stockbroker at the request of a Boston customer buying upon margin, and carries such stocks so purchased in general marginal account which the Boston broker has with the New York stockbroker, there is no implied obligation on the Boston broker's part to have at all times under his personal control the shares of stock which he has purchased on orders for the Boston customer or an equal amount of shares of the same stock, provided he has the contractual obligation of the New York correspondent to deliver such stocks when paid in full for the same."

" 16. The releases introduced in evidence are, upon all the evidence, binding upon the plaintiff.

" 17. The releases in evidence are valid and binding and therefore the plaintiff has no claim except for such money as he paid the defendants after the date of the last release.

" 18. There is no evidence that the New York correspondents of the defendants did not have on hand under their immediate control certificates at all times equal to the outstanding claims of all their customers."

" 20. Upon all the evidence the plaintiff cannot recover."

" (1 c) Upon the undisputed testimony the damage, if any, for breach of contract between the Boston and New York brokers caused by the failure, if any, on the part of the New York brokers to prove that they had at all times enough stock on hand to meet the possible requirements of all their customers, is nominal, and the claim of the customer of the Boston broker is, therefore, restricted to that amount."

" A. The jury must eliminate any consideration of the auditor's report because of his application of an erroneous rule of law."

The rulings were refused. The jury found for the plaintiff in the sum of $5,461.40 ; and the defendants alleged exceptions.

*H. W. Ogden,* (*H. H. Bond* with him,) for the defendants.

*G. Hoague,* for the plaintiff.

SHELDON, J. The plaintiff claimed that he had put certain amounts of money into the hands of the defendants upon their promise to buy and sell for him upon a margin such property and securities as he should from time to time direct, his money to be a margin for the protection of the defendants ; but that the defendants, though pretending to have made these purchases and sales, and to have applied properly the plaintiff's money as margins thereon, had not done so, and were bound to account to him for the amounts of his payments. While some other matters were nominally at any rate in issue, the real dispute between the parties was whether or not the defendants had made the purchases and sales which they were directed to make, and whether or not the plaintiff was bound by the terms of several releases which he had given to the defendants at the end of some successive months. There was no question that the plaintiff had made to the defend-

ants the payments which he claimed, or that these were to be used by the defendants as margins upon purchases and sales which, though to be made upon margins, were yet to be real transactions.

The case had been sent to an auditor and his reports were put in evidence, except that the judge excluded two paragraphs of the first report, which stated certain rulings of law that had been asked for by the defendants and the rulings which he made thereon. In our opinion these paragraphs, not being findings of fact and not being evidence for the jury, were not strictly to be regarded as parts of the report. The reading of them to the jury would have created a danger that the jury might have confused these rulings with those made by the judge, which alone were to govern them. The discretion of the judge was wisely exercised in excluding them. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Manuf. Co.* 208 Mass. 121, 124. *Fisher* v. *Doe*, 204 Mass. 34, 40. *Briggs* v. *Gilman*, 127 Mass. 530, 531.

So too the defendants' request numbered " A " could not have been given. Any mistake that had been made by the auditor on questions of law was to be corrected by proper instructions to the jury. *Tobin* v. *Kells*, 207 Mass. 304, 309, 310. *Hunneman* v. *Phelps*, 199 Mass. 15. *Picard* v. *Beers*, 195 Mass. 419. For another reason also this request was properly refused. The defendants' contention was that the auditor had erred in ruling that the burden was upon the defendants to show that they had used the money which the plaintiff had put into their hands in the manner authorized by their agreement with him, — that is, that they had executed or caused to be executed his orders for purchases and sales. They claim that this was clearly erroneous. We consider that it was correct. That was the effect of the decision in *Fiske* v. *Doucette*, 206 Mass. 275, 282; and it was the point decided in *Lonergan* v. *Peck*, 136 Mass. 361.

The plaintiff's testimony as to his knowledge about the defendants' having purchased the stocks which he had ordered and his intention that the defendants should make such purchases was competent. It tended to show the materiality of the false representations which, as he claimed, had been made to him and had induced him to sign the releases on which the defendants relied. The mere order of evidence was in the discretion of the judge and

is not to be reviewed by us. The plaintiff's testimony that he received no money when he signed these releases was competent for like reasons.

We see no ground on which the amount of the commission and profit received by the defendants from the plaintiff was material to the issues on trial. It was properly excluded.

The fourteenth interrogatory in the deposition of Leavitt was rightly excluded. Enough appeared to show that the answer to this question was merely a matter of opinion, an inference drawn correctly or incorrectly by the witness from facts which were themselves in evidence. The defendants' counsel in their brief have confused this with the eleventh interrogatory, which appears to have gone in without objection. The fifteenth, sixteenth and seventeenth cross-interrogatories and the answers thereto were competent upon the issue whether the purchases and sales in question had been actually made and whether the stocks bought were ready and available to be delivered to the plaintiff through the defendants if he had paid the balances due from him and called for the certificates.

It was for the judge to decide whether Mr. FitzGerald was qualified to testify to the law of New York. The witness testified that he had made a special study of the subject. We cannot say that the action of the judge was clearly wrong. *Teele* v. *Boston*, 165 Mass. 88, 89. *Howland* v. *Westport*, 172 Mass. 373.

The seventh and eighth requests for instructions could not have been given as asked for. The facts therein stated might all have been true, and yet the New York brokers might not have had under their control certificates to a sufficient amount which might rightly have been delivered to a particular customer. If these requests contained a correct and sufficient statement of the law, a broker who had undertaken to purchase and claimed that he had purchased on a margin a hundred shares of a particular stock for each one of a hundred different customers, and who was bound to deliver upon demand and full payment that number of shares to each customer, would conclusively establish against each customer the exact fulfilment of his obligation by proof that he had in his possession or under his immediate control barely more than a hundred shares of that

stock; and that would be so, although each one of his hundred customers should simultaneously make the same claim against him that is made in this case. If all transactions were real, it well might be that sales and purchases of stocks made and concluded through the clearing house of a stock exchange by many different brokers with each other for many different customers would result in leaving each broker in possession of the shares which he had purchased, and in the delivery of all which had been sold. But the very fact that a broker is not left in the possession of all the shares that he has undertaken to buy is of itself evidence tending to show that all of his pretended purchases have not really been made, that some of the deliveries that he should have seen to it that he received have not been made to him, either through the clearing house or otherwise. It is not that purchases and sales cannot be properly set off against each other; it is rather that the set-off cannot be a real one unless the opposite transactions that are so set off are themselves real ones, have really been made and carried out. The reasoning of the opinion in *Fiske* v. *Doucette*, 206 Mass. 275, is applicable. The broker, to put himself right in such a case as the one now before us, must show that he has under his control, free from the just demands of other customers and available for delivery to the particular customer whose case is in question, the stocks of which that customer upon payment will be entitled to demand delivery. This is the doctrine declared in *Fiske* v. *Doucette*, *ubi supra*, and we adhere to it. This was in substance the rule that was given to the jury; and the defendants have no ground of exception thereto.

The ninth request could not have been given. The defendants agreed to make purchases and sales for the plaintiff. That was the agreement as stated in the first letters interchanged between these parties; and we find nothing in their subsequent correspondence to vary this. Their agreement was that they would themselves carry out the transactions, not that they would rely upon a promise by another to do so or upon an assurance by another that he had done so. Under such circumstances, if they chose to accept the promise or assurance of another, they did so at their own risk. They had agreed to act themselves, and they reported to the plaintiff that they had done so; they

received his money on the faith of this promise and of these reports. They cannot shift their responsibility on another.

The tenth request could not have been given. If the minds of these parties never met and there was no agreement between them, the defendants were not justified in using the plaintiff's money at all, and must account to him for it.

The thirteenth request was really immaterial; for the plaintiff was permitted to recover only upon upon the ground that there had been no actual making of the purchases and sales ordered by him. It could not have been given in any event without adding the qualification that the certificates should have been immediately available and under the control of the defendants upon payment of the full price thereof.

The eleventh, twelfth, fourteenth and twentieth requests, and the one numbered 1 c are sufficiently covered by what has been said.

The eighteenth request would have been misleading. The burden was on the defendants to account, as we already have pointed out. It cannot be said that it appeared that either the defendants or their New York agents had on hand certificates to the amount therein stated.

The sixteenth and seventeenth requests refer to the effect of the releases given by the plaintiff to the defendants. The plaintiff could not be relieved from the binding effect of these unless he showed that they were procured from him by fraud. Assuming that the defendants' misrepresentations as to the character and legal effect of these releases and as to their reasons for desiring to have the releases given to them were not of themselves sufficient to entitle the plaintiff to avoid the releases, yet the instructions requested could not have been given. There was ample evidence to justify a finding that he was induced to sign the releases by representations, which have been found to be false and fraudulent, that the defendants had actually made the purchases and sales which they reported to him, and that the accounts which they rendered to him were the correct accounts of real and not merely fictitious transactions. It is not worth while to recapitulate this evidence. It is the same evidence upon which it was found that no such purchases and sales had been made, although upon the issue of fraud the burden of course was on the plaintiff.

We have been carefully through the voluminous record, and cannot find that any of the defendants' rights have been infringed.

*Exceptions overruled.*