SIDNEY CHASE & others *vs.* CITY OF BOSTON.

Suffolk.    November 22, 1901. — February 27, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Agent.    Broker.    Tax.    Wagering Contracts.*

In the ordinary relation between broker and customer when stocks are bought on a margin the legal title to the stocks is in the broker and they are taxable to him.

The fact, that in the ordinary relation between broker and customer when stocks are bought on a margin the legal title to the stocks is in the broker, does not conflict with the construction of R. L. c. 99, § 4, that the broker is there treated not as a party to a contract to buy and sell but as one employed to buy or sell upon the customer's behalf.

APPEAL to the Superior Court under St. 1890, c. 127, from a decision of the assessors of the city of Boston, refusing to abate a tax paid under protest by the appellants, a firm of stockbrokers, as the owners of shares in corporations of the value of

$200,000, of which the petitioners' customers had paid forty per cent and the petitioners the remaining sixty per cent, the shares being pledged to secure the last named amount, which the petitioners borrowed for the purpose, filed February 4, 1901.

In the Superior Court, upon agreed facts, judgment was ordered for the petitioners in the sum of $3,032.13; and the respondent appealed.

*A. J. Bailey*, for the respondent.

*E. W. Hutchins*, for the petitioners.

HOLMES, C. J. We have had some doubt in this case whether the statement of facts ought not to be discharged. Without more explicit statements we should not be willing to assume that the petitioners' relation to the stocks bought by them was different from the ordinary one of brokers carrying stock upon a margin, and on the other hand a turn is given to some of the expresions in the agreed facts that suggests a peculiar set of transactions. We have decided to take the statement as intended to describe the ordinary relation between broker and customer when stocks are bought upon a margin. If the statement thus construed does not present the truth, the petitioners can have it discharged by applying to the Superior Court. *West v. Platt*, 124 Mass. 353. It is very plain that the respondent did not mean to agree that the stocks belonged to the customers of the petitioners as that would have been to yield the whole ground upon which the petitioners were taxed. This ground is explicitly recognized in the statement of facts.

The petitioners contend that the necessary conclusion from the statement is that they held the stock as pledgees, the purchasers being the owners and pledgors, and, if this conclusion is not simply a matter of construction, that we ought to adopt the widely prevailing opinion that that is the relation of the parties in ordinary purchases upon margin, contrary to the view of the Massachusetts cases. *Wood v. Hayes*, 15 Gray, 375. *Covell v. Loud*, 135 Mass. 41. See *Weston v. Jordan*, 168 Mass. 401, 404.

We see no sufficient reason for departing from what has been understood to be the law of Massachusetts ever since the time of Chief Justice Shaw. No doubt, whichever view be taken, there will be anomalies, and no doubt it is possible to read into either

a sufficient number of implied understandings to make it consistent with itself. Purchases on margin certainly retain some of the characteristics of ordinary single purchases by an agent, out of which they grew. The broker buys and is expected to buy stock from third persons to the amount of the order. *Rothschild* v. *Brookman*, 5 Bligh, (N. S.) 165; 2 Dow & Clark, 188. *Taussig* v. *Hart*, 58 N. Y. 425. He charges his customer a commission. He credits him with dividends and charges him with assessments on stock. However the transaction is closed, the profit or loss is the customer's. But none of these features is decisive. Lenders often charge a commission, and a transaction in similar form might be a simple wager. See *Harvey* v. *Merrill*, 150 Mass. 1; *Morris* v. *Western Union Telegraph Co.* 94 Maine, 423; *North* v. *Phillips*, 89 Penn. St. 250. As in the case of partnership it would be possible to go through a long time and much business without ever having to consider where was the title to the assets employed. It seems to us that the duties and rights of the broker with regard to the stock which he purchases ought to weigh more than anything else in deciding who is the owner of that specific stock.

We think that we must assume that in this case, as generally, the brokers were not bound to keep the stock of a certain customer distinct, that they could take a single certificate in their own name for this and similar stock purchased for others, and that they could pledge the whole to a bank for advances made to them, although much in excess of the sum due to them from any one of the persons upon whose orders the stock was bought. Probably they were not bound to deliver the identical stock purchased, even subject to the large powers already enumerated, but could deliver any stock that they happened to have on hand. We have read nothing in the discussions of the question that have attracted our attention that makes it seem more reasonable to describe rights of such extreme tenuity of connection with any specific object, as property in stock rather than as contractual rights. The English doctrine seems to be the same as that of this Commonwealth, so that we are not left quite alone in a desert of logic. *Bentinck* v. *London Joint Stock Bank*, [1893] 2 Ch. 120, 140, 141.

It is entirely consistent with our views upon the question

before us to hold that in R. L. c. 99, § 4, language is used in a popular sense, and that the broker is not treated there as a party to a contract to buy or sell, but as one employed to buy or sell upon the plaintiff's behalf. *Rice* v. *Winslow, post,* 500.

We understand that the only question before us is whether the stocks held by the petitioners were property of theirs, and that if so the respondent is entitled to prevail.

*Judgment for the respondent.*