MARK H. CREHAN *vs.* ROY C. MEGARGEL & others.

Suffolk.     November 19, 1919. — March 20, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Stockbroker. Agency. Conversion. Contract,* Performance and breach. *Evidence,* Burden of proof. *Conflict of Laws.*

A Massachusetts stockbroker has the legal title to securities acquired by him under a contract, made with a customer who is a resident of Massachusetts and to be performed here, by the provisions of which the stockbroker is to receive, buy, sell and carry securities on margin; and, the customer being without a right to immediate possession, the stockbroker, if he uses the securities for his own purposes, is not liable to the customer in an action of tort for conversion.

A Massachusetts stockbroker, who has acquired securities under an agreement with a Massachusetts customer, made and to be performed in Massachusetts, whereby the stockbroker is to receive and carry securities as margin for the customer's account, if he fails to carry the securities as margin and uses them for his own purposes, may be charged with their value in an action by the customer for money had and received.

In an action against a stockbroker by a customer for breach of an agreement to receive, buy and sell, and carry securities on margin, the burden rests on the stockbroker to prove that he had in his possession or control at all times, available for delivery to the plaintiff, the securities which he purported to be carrying for him.

CONTRACT OR TORT against a firm of stockbrokers, with a declaration as amended in two counts, the first count being in tort for the conversion of certain securities, and the second in contract for $1,505,577.94, money alleged to have been had and received by the defendants to the plaintiff's use. Writ dated January 20, 1917.

The case was heard in the Superior Court by *Raymond,* J., upon the auditor's report, which was the only evidence introduced. Material portions of that report and questions of law raised in this court are described in the opinion.

The judge made alternative findings as follows: "I find that the facts set forth in the auditor's report are true. I find for the plaintiff under the first count in his declaration and assess damages on the principles followed by the auditor in the sum of $80,309.07 including interest to September 20, 1919.

"If my ruling that the defendants are entitled to mitigation of damages to the extent of the same percentage of the plaintiff's indebtedness on June 20, 1916, that the value of sixty-four hundred shares of Butte and Superior on that date bears to the total value of all of the securities, cash payments and dividends appearing to the credit of the plaintiff on the defendants' books on that date, is wrong, then I rule that the defendants are estopped to deny that the amount of the indebtedness of the plaintiff to the defendants at the date of the writ was $198,664.96 and deducting that from the value of the plaintiff's stock converted, I assess damages under the first count in the sum of $440,860.85. The defendants duly excepted to this ruling.

"If my ruling that the plaintiff is entitled to recover under the first count of his declaration is wrong, I find for the plaintiff under the second count in his declaration and find that the defendants should account to the plaintiff for and that the plaintiff should recover from the defendants $542,634.59. This finding is the result of subtracting from the value of the total consideration delivered by the plaintiff to the defendants at the times of delivery as shown in the auditor's report, the amount of the plaintiff's indebtedness paid by the defendants to obtain possession of some of the securities delivered and also the payments of cash by the defendants to the plaintiff thereafter, to which I add interest from the date of the writ to September 20, 1919. amounting to $85,-821.53, making a total of $628,456.12."

The judge then reported the action to this court for determination.

*W. D. Gray*, for the defendants.

*S. R. Wrightington*, for the plaintiff.

DE COURCY, J. The plaintiff's alleged claim grows out of certain stock transactions handled by the defendants as his brokers. They are a limited partnership, organized under the laws of the State of New York, having their principal office in New York City, with branches in Boston and Chicago. Previous to the opening of his account with them the plaintiff had a margin account with Nickerson and Company, a stock-brokerage house in Boston. In April, 1916, on orders given by him, the securities which he had on margin were transferred from Nickerson and Company to the defendants, the latter paying to Nickerson and

Company the amount of the indebtedness for which the plaintiff's securities were held as margin.

The plaintiff's account with the defendants was a margin account, and ran until December, 1916. He visited their Boston office practically every day. Most of the orders to buy and sell were signed in the plaintiff's name by one Kane, an employee of the defendants, whose advice he followed. During the summer, fall and early part of the winter, the market was falling; in December the defendants called upon the plaintiff for additional margin; and on his failure to comply, they sold or pretended to sell practically all of his securities during that month.

The plaintiff does not make his claim under the so called wagering contract statute, R. L. c. 99. He brings his action to recover the value of the securities received by the defendants from Nickerson and Company, and certain items of cash and securities subsequently delivered to them by the plaintiff, and dividends credited to him on the books of the defendants.

The oral contract between the parties, as found by the auditor, was in substance as follows: "The defendants agreed to, and did in fact, accept from the plaintiff through deliveries made by Nickerson and Company, certain of the shares of stock described in the account annexed to the plaintiff's declaration. They agreed to, and did in fact, pay Nickerson and Company the amount that the plaintiff was indebted to Nickerson and Company at the time of the transfer of the account. The plaintiff understood that, in order to finance this transaction, the defendants would be obliged to borrow a substantial amount from some bank. This the defendants did, and the plaintiff assented to the use of such securities as the defendants deposited as collateral security for such loans. The defendants agreed that all of the securities delivered by Nickerson and Company, and any other assets which thereafter entered into the plaintiff's account, should and would be carried by the defendants to the credit of the plaintiff as marginal security for whatever trading in stocks the plaintiff might carry on through the defendants as brokers. They agreed to execute such orders to buy or sell as the plaintiff might give, so long as the plaintiff kept his margin good. The plaintiff, on his part, agreed to maintain at all times the amount

of margin required by the defendants, and to be bound by the lawful rules and customs of the stock brokerage business."

Among the securities transferred from Nickerson and Company to the defendants were seventy-three hundred shares of Butte and Superior; and he bought three hundred shares while his account was with them. By June 20, they had not in their possession or control any of this stock, although no orders to sell it were given by the plaintiff or Kane. The evidence tended to show that this stock was used to make deliveries on the "Armstrong" account, which was always a "short " account, and was manipulated by the defendant Coombs. But even if we assume, as the auditor finds, (so far as it is a question of fact,) that the defendants, through the "short" sales in the Armstrong account, "converted, either under the Massachusetts or New York law, all of the plaintiff's shares of Butte and Superior delivered to them as margin to their own use," he cannot recover on his count in tort for conversion. As the trial judge ruled, the question whether the defendants converted this stock is to be determined by Massachusetts law. The contract between the parties was made, and was to be executed, in Boston. The securities received as margin were taken over from another Boston broker, they were mostly acquired here, and the orders to buy and sell were given by a resident of this State at the Boston office of the defendants. In accordance with the long established rule of law in this Commonwealth, the legal title to the stocks carried on margin was in the brokers, as between them and their customer; and this is true alike of the stocks bought on margin by the defendants, and those deposited with them under the circumstances here disclosed when the account was transferred from Nickerson and Company. *Chase* v. *Boston,* 180 Mass. 458. *Furber* v. *Dane,* 203 Mass. 108. *Hall* v. *Paine,* 224 Mass. 62, 72, 73. As the plaintiff did not have the right to immediate possession of the securities alleged to have been converted, he cannot maintain an action of tort for conversion. *Raymond Syndicate* v. *Guttentag,* 177 Mass. 562. *Hodgkins* v. *Bowser,* 195 Mass. 141. The trial judge was wrong in ruling that the plaintiff could recover under the first count of his declaration.

The plaintiff is entitled to recover under his second count in contract. Under the agreement as found, it was the duty of the

defendants to hold the plaintiff's securities as margin, and to execute his orders to buy and sell. The burden rested on them to prove that they had in their possession or control at all times, available for delivery to the plaintiff, the stocks which they purported to be carrying for him. *Greene* v. *Corey*, 210 Mass. 536. *Adams* v. *Dick*, 226 Mass. 46. The most important item declared on is the sixty-four hundred shares of Butte and Superior. Instead of carrying this as margin, the defendants on or before June 20, 1916, wrongfully disposed of the stock for their own benefit, without the consent of or ratification by the plaintiff. And they failed to satisfy the auditor or judge that they actually purchased stocks, as ordered by the plaintiff, with the money advanced by him.

The difficulty in determining the damages is due largely to the fact that the figures in the record relate mostly to the claim for conversion. It appears, however, that the value of the plaintiff's securities turned over to the defendants in April, 1916, was $1,264,883.17. He concedes that they should be allowed to deduct from this sum the amount of his indebtedness to Nickerson and Company, paid by the defendants in order to obtain the securities; and also that he should credit the defendants with $34,130.70, which he received from them in cash during the running of the account. In addition the defendants are answerable for the plaintiff's cash payments, $44,550.52. They also admitted on their books that they had received dividends on his account, amounting to $196,144.25. The trial judge has found that the defendants in accounting to their principal, owe the plaintiff $542,634.59, and interest thereon, based upon the above figures. We cannot say that the decision was not warranted. Judgment must be entered for the plaintiff on the count in contract, in accordance with the finding.

*So ordered.*