### In re CODMAN, FLETCHER & CO.

### CHAPIN v. BRICKLEY.

(Circuit Court of Appeals, First Circuit. March 6, 1923.)

### Nos. 1595, 1596.

1. **Bankruptcy ⊂⇒440—Petition to revise proper to review decision of ownership of fund.**

 The decision on a petition claiming ownership of funds in the hands of a bankrupt's trustee *held* reviewable by petition for revision, and not by appeal.

2. **Bankruptcy ⊂⇒140(3)—Securities in bankrupt broker's hands not subject to claims of general customers.**

 Securities found in the possession of a bankrupt broker, not of the kind bought for a client's account, were not subject to legal or equitable claim by such client or his representative, where, by agreement, his securities had been mingled with others and hypothecated by the broker to secure loans.

3. **Bankruptcy ⊂⇒140(3)—Creditor, tracing funds and agreeing to pro rata division of such funds, cannot claim greater interest than other parties to agreement.**

 Where bankrupt broker had mingled and hypothecated customers' securities, and banks holding same sold them and applied the proceeds to payment of their respective loans, and by agreement of creditors, who had traced their securities, the surplus over the loans had been paid to the trustee in bankruptcy, under an agreement that they be paid to such customers pro rata, one of such customers cannot assert any greater interest therein than the others, and he cannot claim any legal or equitable right or interest in other securities in the possession of the trustee which he is unable to trace as his property.

Appeal from, and Petition to Revise, the District Court of the United States for the district of Massachusetts; Julian W. Mack, Judge.

In the matter of Codman, Fletcher & Co., bankrupts. The District Court (284 Fed. 273), affirmed an order of the referee, and Clara F. Chapin, executrix of the estate of one Chapin, a creditor of the bankrupt, appeals and petitions to revise. Appeal dismissed, and decree affirmed.

E. Irving Smith, of Boston, Mass., for appellant.

Mark M. Horblit, of Boston, Mass. (Jacob Wasserman, A. L. Deutschman, and Horblit & Wasserman, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. [1] The matter involved in these proceedings is before us upon an appeal from and a petition to revise a

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

decree of the District Court for the District of Massachusetts affirming an order of the referee in bankruptcy. We think the case is properly here on the petition to revise and that the appeal should be dismissed. Hutchinson v. Le Roy, 113 Fed. 202, 51 C. C. A. 159; In re Worcester County, 102 Fed. 808, 811, 42 C. C. A. 637.

The petitioner is the executrix of one Chapin, a margin customer of a bankrupt firm of stockbrokers of whose estate the defendant, Brickley, is the trustee. Prior to May 16, 1918, the bankrupts were engaged in business at Boston. On that day an involuntary petition was filed against them, on which they were later adjudicated bankrupts, and the defendant appointed trustee. The margin account which Chapin had been carrying with them was, on May 16, 1918, credited with certain securities, the aggregate value of which was $16,124. Some of the securities he had brought in and deposited as margin and the balance he had given orders to purchase. Whether the bankrupts purchased any of the securities ordered the record does not show, but, if they did, all of the securities, including those brought in and those ordered, had been, prior to May 16, 1918, hypothecated to secure loans made to them. If the securities ordered were purchased, none of the certificates therefor were in the name of Chapin, and none of them were marked, set apart, or in any way identified as the property of Chapin, but were mingled by the bankrupts with other like securities, some of which belonged to them, while the balance had been purchased for other customers or deposited by them with the bankrupts. None of the securities brought in by Chapin or ordered from the bankrupts were in their possession on the date of the filing of the petition in bankruptcy, as they had been previously pledged as above stated. The only assets in the hands of the bankrupts and which were turned over to the trustee consisted of office furniture, the equities in seats on the New York and Boston Stock Exchanges, and bonds for $3,095.36 and stocks for $29,539.35 carried on customers' accounts; and none of these were stocks or bonds of the kinds credited on Chapin's margin account.

It was the understanding of the parties that the securities deposited by Chapin or purchased for him were to be security for loans and commissions due from him to the bankrupts on account of the purchase and sale of securities, and it appears that, at the date of the bankruptcy, Chapin owed the bankrupts $10,684. By the custom of brokers in Boston, and by agreement of the parties, the brokers were under no obligation to preserve the identity of particular securities deposited by or purchased for a customer, but could exchange them for or mingle them with other securities of the same kind held by the brokers, and in this instance it was particularly agreed between the bankrupts and Chapin:

"That the securities, or any of them, * * * so credited on the account of the said Chapin might without notice be loaned or pledged by the brokers, either for the sum due thereon or for a greater sum, and either separately or together with other securities, and that the brokers, whenever they deemed it necessary for their protection. might in their discretion close the account and sell the securities either at public or private sale, or both, without notice or demand for more margin."

[2] From the foregoing it is evident that the petitioner has, neither under the Massachusetts nor the New York rule, any right, legal or equitable, to the securities which came into the possession of the trustee. Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005, 7 L. R. A. 570; Furber v. Dane, 203 Mass. 108, 120, 89 N, E. 227; Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047; Schuyler v. Littlefield, 232 U. S. 707, 710, 713, 34 Sup. Ct. 466, 58 L. Ed. 806; In re Leavitt & Grant, 215 Fed. 901, 132 C. C. A. 139.

Subsequent to the filing of the petition in bankruptcy and prior to the filing of the plaintiff's petition, the banks to which the securities of Chapin and other margin customers had been pledged sold the same and applied the proceeds to the payment of their respective loans, and as, it is agreed, they had the right to do. After applying the proceeds in the extinguishment of their loans, there remained in the hands of the banks cash surpluses aggregating $152,925.55. Numerous suits in equity were brought in the state court by customers against the banks, the trustee, and other customers, including the petitioner, claiming rights in the cash surpluses superior to those of the trustee, and praying for a distribution of the surpluses among the plaintiffs and the defendants whose securities were alleged in the bills in equity and answers to be capable of being identified and traced into the securities which had been hypothecated with the respective banks. A statement prepared by the trustee showed that the securities brought in by customers and deposited with the bankrupts could be identified and traced into the collateral held by the banks and that in the case of each bank the securities so identified and traced greatly exceeded in value the surplus remaining in the hands of such bank. After prolonged negotiations it was agreed that the surpluses should be turned over to the trustee, and, as these surpluses were not sufficient to cover the claims of those who could trace and identify, the parties to those suits, including the petitioner, agreed to accept the sums set against their respective names, being their proportions of the surpluses. In pursuance of this agreement the surpluses were turned over to the trustee for distribution and, by an order of the District Court, were distributed as provided for in the agreement.

[3] It thus appears that the entire amount of the surpluses in the hands of the banks was distributed by the court, in accordance with the agreement, on a pro rata basis among those customers of the bankrupts, including the petitioner, who could establish superior equities therein by tracing the stocks or securities into the hands of the respective banks and which they had brought in to the bankrupts. This being so, we are unable to see how the petitioner can assert any further interest in such surpluses, and particularly as against the trustee into whose hands they came for distribution only in pursuance of the above-mentioned agreement.

It is difficult to understand from what has been presented by petitioner's counsel just what her claim and its extent is. If it is that she has an equitable right of property in every security carried by the bankrupts for her testator at the date of the bankruptcy, so far as

those securities were then in the possession of the bankrupts and could be identified and traced, the answer is that no such securities were in their possession at the date of bankruptcy. If her contention is that she has an equitable property right in each of the securities held by the bankrupts for her testator, which could be identified and traced, although not then in their possession, but pledged to the banks, the answer is that as to such securities the record shows that she has been paid her proportionate part of the surpluses after satisfying the banks' claims. If her claim is that she has an equitable right of property in each of the securities carried by the bankrupts for her testator, which she can identify and trace into the hands of the banks, to the extent that the proportionate part of the debt of the bankrupts to the banks attributable to her securities exceeded her debt to the bankrupts, the answer is that as to such excess the bankrupts were debtors to her, as the contract under which the securities were held by the bankrupts authorized the bankrupts to pledge them "either for the sum due thereon or for a greater sum." See, also, Furber v. Dane, 203 Mass. 108, 89 N. E. 227. And if her claim is that she has an equitable right of property in the securities ordered and credited by the bankrupts to her testator's account, none of which could be identified and traced into the hands of the banks or of the trustee, the answer is that, under the law of Massachusetts, which governs this case (Bryant v. Swofford Bros., 214 U. S. 279, 290, 29 Sup. Ct. 614, 53 L. Ed. 997; In re Swift, 112 Fed. 315, 50 C. C. A. 264; In re Swift [D. C.] 105 Fed. 493), she has no legal or equitable right of property in such securities. Wood v. Hayes, 15 Gray (Mass.) 375; Covell v. Loud, 135 Mass. 41, 46 Am. Rep. 446; Weston v. Jordan, 168 Mass. 401, 47 N. E. 133; Chase v. Boston, 180 Mass. 458, 62 N. E. 1059; Id., 193 Mass. 522, 79 N. E. 736; Furber v. Dane, 203 Mass. 108, 89 N. E. 227; Id., 204 Mass. 412, 90 N. E. 859, 27 L. R. A. (N. S.) 808; Brown v. Rushton, 223 Mass. 80, 111 N. E. 884; Hall v. Paine, 224 Mass. 62, 112 N. E. 153, L. R. A. 1917C, 737; Crehan v. Megargel, 235 Mass. 279, 126 N. E. 477.

In No. 1595, the appeal is dismissed, with costs to the appellee.

In No. 1596, the decree of the District Court is affirmed, with costs to the trustee in bankruptcy.