Hyman Krinsky *vs.* Geoffrey G. Whitney & others.

Suffolk.    January 7, 26, 1942. — March 27, 1944.

Present: Field, C.J., Qua, Dolan, & Ronan, JJ.

*Contract*, Rescission, Performance and breach. *Stockbroker*. *Practice, Civil*, Exceptions: whether error harmful, general exception; Charge to jury; Requests, rulings and instructions. *Error*, Whether error harmful. *Evidence*, Presumptions and burden of proof, Relevancy and materiality. *Estoppel.*

Even if a customer of a stockbroker delivered securities to him as margin for an account in reliance on his promise, which he did not intend to keep, not to sell them without first giving notice to the customer, the customer was not entitled to rescind his contract with the stockbroker and recover the value of the securities where, for several months after the making of such promise, he traded actively on the account and complied as long as he could with frequent demands for additional margin and for sales of securities by him, following which the stockbroker sold some of the customer's securities without previous notice to him.

In an action, in which there was a verdict for the defendant, against a stockbroker by a customer for loss alleged to have been incurred through the defendant's failure to close out the plaintiff's margin account upon being ordered to do so by the plaintiff, the evidence taken most favorably to the plaintiff did not require a finding for him on the decisive issue, whether or not he had given any such order to the defendant.

In view of a verdict for the defendant, the plaintiff was not prejudiced by an incorrect instruction to the jury that in certain circumstances he could not recover substantial but could recover only nominal damages.

A reference in a trial judge's charge to the ordinary contract between stockbroker and customer, which the jury must have understood as stating merely a general proposition of law, disclosed no error on the record although the action was for breach of a special contract between such parties.

In an action against a stockbroker by a customer in which the issues were whether the defendant had made a special agreement not to sell securities of the plaintiff in his possession without previous notice to the plaintiff and whether he had broken such an agreement if made, the judge properly refused a ruling that the burden was on the defendant to show that he had a right to make certain sales of the plaintiff's securities, a ruling relating to a stockbroker's duty to demand additional margin before selling out an account, and a ruling to the effect that, if the defendant was under no obligation to give notice to the

plaintiff before selling securities, the sending of margin calls to the plaintiff might be found to be a waiver of the defendant's right to sell without giving previous notice.

The fact, that a stockbroker incorrectly stated to a margin customer that sales by the stockbroker of securities of the customer had been made in accordance with instructions from an associate of the customer, did not estop the stockbroker from showing subsequently as against the customer that the sales were made because the customer's account was undermargined.

Letters from a stockbroker to a customer were admissible in an action by the customer against him for breach of their agreement where it appeared that the plaintiff had conferred with the defendant as a result of each letter and the substance of the conferences was in evidence.

In an action against a stockbroker by a customer, evidence was admissible of a demand by the defendant upon the plaintiff for additional margin at a time when, it might be found, the plaintiff's account with the defendant was still pending, although the plaintiff testified that he had ordered the account closed before that time.

A general exception to the admission in evidence of a letter as a whole could not be sustained where part of it was admissible, even if another part was not.

CONTRACT. Writ in the Superior Court dated November 2, 1935.

The action was tried before *Greenhalge, J.*

*J. C. Johnston, (B. Goldman* with him,) for the plaintiff.
*M. Jenckes, (W. P. Waldron* with him,) for the defendants.

RONAN, J. This is an action of contract in five counts to recover from the defendants the losses that the plaintiff alleged were sustained by him on account of fraud and breach of contract by the defendants arising out of a margin account which he had with the defendants. The first count alleged that the defendants had failed, neglected and refused to close out the plaintiff's account when he demanded that they do so on February 4, 1930, at a time when he had a large equity in the account, that they did not close out the account until October, 1930, and that in consequence thereof the plaintiff incurred a great loss. The second count is identical with the first except that the time of the plaintiff's demand is stated to be April 1, 1930. The third count alleged that the defendants, in violation of their agreement with him not to sell his securities without giving him notice, sold some of his securities on January 31, 1930, and Febru-

ary 1, 1930, without first giving the plaintiff notice of said sales. The fourth count was on an account annexed and the fifth count was for money had and received. Both of these counts sought to recover the money and the value of the securities that the plaintiff had transferred to the defendants while he was dealing with them as a margin customer. The jury returned verdicts for the defendants on the first three counts. The judge at the close of the plaintiff's testimony directed the jury to return verdicts for the defendants on the fourth and fifth counts.

There was evidence from which the following facts could be found: The plaintiff opened a margin account in August, 1929, with the defendants by depositing $9,000. He was told by McCarthy, the defendants' customer's man, that it was the practice of the defendants not to sell out a customer without first giving the customer notice and enough time to take care of the account. In response to a margin call in August, 1929, the plaintiff reduced his indebtedness to the defendants by selling some of his securities. On September 7, 1929, he received a margin call for $10,000 in cash or securities. Within a few days he saw the defendant Whitney and told him that he thought he would close out the account, but Whitney said that, as the plaintiff was in a position to put up as collateral the securities that the plaintiff had in a trust which he had created, the defendants would not sell him out, that they would accept the securities as cash as of the market of the day they were received by the defendants, that they would protect the plaintiff, and that they would not sell any of the securities he delivered to them without first getting in touch with him. Whitney checked off certain securities on the plaintiff's margin account which he told the plaintiff to sell, which the plaintiff did on September 12, 1929. Whitney advised him to consult with McCarthy who would take care of him, and not to overload his account. Thereafter the plaintiff delivered fourteen different securities to the defendants from September 12, 1929, to November 6, 1929. All these securities were delivered as collateral security to the margin account. The plaintiff also paid the defendants $5,000 on November 9,

1929. After the talk with Whitney on or about September 12, 1929, the plaintiff continued to trade actively on the margin account, and up to December 31, 1929, there were one hundred six orders to buy or sell, all of which were signed by the plaintiff except thirteen. The plaintiff gave no orders after January 1, 1930, and the account became inactive. The plaintiff received many margin calls in 1929 and always met them by depositing either cash or securities as collateral or he talked with Whitney or with McCarthy and the latter told him to forget them. He saw Whitney on November 13 or 14, 1929, and told him that he had no more securities to put up and offered notes secured by real estate mortgages, which the defendants later refused to accept and returned to the plaintiff. He got monthly statements from the defendants. His indebtedness to the defendants at the end of October, 1929, was $150,229.44, although it was $122,815.48 at the beginning of the month. The plaintiff's account was in a critical condition on October 16, 1929, and the defendants called for $40,000. The plaintiff made a substantial deposit of securities on October 18, 1929, and on October 24, 1929. He received another margin call on October 26, 1929, for $23,000 to which the plaintiff responded with a check for $7,500 which was returned "unpaid" by the bank upon which it was drawn. Further securities were delivered to the defendants on November 4, 1929, in response to a margin call on November 3, 1929, for $10,000, which was repeated on November 4, 1929. He made his last delivery of securities on November 6, 1929. On November 7, 1929, he received another margin call. He sent the defendants three checks, two of which were dishonored. In reply to a special delivery letter stating that if he did not give the defendants $20,000 in cash "before 9 A.M. November 11th" it would be necessary to close his account, the plaintiff sent them a check for $3,500. The plaintiff made sales of securities which reduced his indebtedness to the defendants to $88,774.55 at the beginning of December, 1929. Whitney wrote him on December 9, 1929, that there was an equity of only $2,600 when $32,000 was required for an adequate margin, and that unless his account was satisfac-

torily protected by noon on the next day "we shall proceed
to liquidate the account." As a result of a conference with
Whitney, the plaintiff sold certain securities, thereby re-
ducing the debit balance to $70,500. The plaintiff did not
respond to a call on December 20, 1929, for additional mar-
gin of $15,000. He was advised by the defendants on De-
cember 31, 1929, that unless the account was properly pro-
tected by January 2, 1930, they would proceed to liquidate
it. The plaintiff conferred with Whitney. Whitney on
January 9, 1930, wrote the plaintiff advising him to protect
the account if he could by putting up a margin of twenty-
five per cent if he was able to do so or to secure a bank loan,
or to make a partial liquidation of the account. On Janu-
ary 31, 1930, the account continued undermargined, and
Whitney on that day and on February 1, 1930, sold securi-
ties and credited the plaintiff's account with $57,296.79.
The value of the securities still in the account on February
4, 1930, was $16,437.50 and the balance due the defendants
was $13,231.52, leaving the plaintiff with an equity of
$3,205.98. The plaintiff ordered the defendants to close
out the account when he conferred with Whitney on Febru-
ary 4, 1930, protesting the sales of his securities, and asserting
that Strickland, the plaintiff's cotrustee, had not instructed
Whitney to sell as Whitney had stated in his letter of Febru-
ary 1, 1930, to the plaintiff. The plaintiff made a similar
demand on April 1, 1930, to close out his account but the
account was not closed until October, 1930, and on April 2,
1931, a check for $522.99 representing the credit balance
and interest was received and cashed by the plaintiff.

We adopt the order followed by both parties in presenting
the case to this court. We first consider the rulings direct-
ing verdicts for the defendants on the fourth and fifth counts.
We assume that the plaintiff was entitled to show that he
relied upon the statement of Whitney that if the securities
in the trust were delivered to the defendants they would
not sell out the plaintiff, at least not without previous notice
of such sale, and that Whitney did not intend to keep this
promise; and we disregard the denial of Whitney that such
an agreement was made and the finding of the auditor that

Whitney agreed between October 16 and 18, 1929, not to sell the plaintiff out so long as he kept his account properly margined; for the plaintiff is entitled to the most favorable view of the evidence in determining whether the rulings directing verdicts for the defendants were free from error.

The plaintiff contends that one who is induced by fraud to pay money to another may upon the discovery of the fraud rescind the contract and recover the money in an action brought upon a count for money had and received or upon an account annexed, *Dana* v. *Kemble*, 17 Pick. 545; *Evatt* v. *Willard D. Martin, Inc.* 302 Mass. 414, and further contends that this remedy is available to a margin customer who has been deprived of his securities through fraud of the stockbroker. Where a customer's orders are not executed at all or are executed improperly, or where the broker is guilty of fraud, the customer may rescind the contract under which he paid his money and recover what he has paid. *Todd* v. *Bishop*, 136 Mass. 386. *Ginn* v. *Almy*, 212 Mass. 486. *Crehan* v. *Megargel*, 235 Mass. 279. *Patch* v. *Cashman*, 244 Mass. 378. *Wisbey* v. *Alan Shepard & Co. Inc.* 268 Mass. 21. *Quirk* v. *Smith*, 268 Mass. 536. *Commissioner of Banks* v. *Chase Securities Corp.* 298 Mass. 285.

But whether the agreement with Whitney was made about September 12, 1929, as the plaintiff testified, or about the middle of October, 1929, as the auditor found, it is plain that upon the plaintiff's own story, which is the testimony most favorable to him, he must have known that almost immediately after such a promise was made, if it ever was made, the defendants were insisting upon more collateral and also insisting upon the plaintiff selling such securities as they directed to be sold; that there were frequent demands for collateral and for sales of the securities by him, all of which he complied with as long as he was able to do so; that such demands were so often that the plaintiff testified that he was "sick because of the hammering" Whitney was giving him; and that the plaintiff knew the market was falling and yet on his own story it was not until February 4, 1930, that he took any definite stand or protested sales of his securities by the defendants. Indeed,

as late as December 9, 1929, according to his own testimony, he told Whitney that he was grateful to him for keeping his agreement. The plaintiff, if he intended to rescind his agreement with the defendants on account of the fraud which he now alleges, was bound to act within a reasonable time and notify the defendants that he would no longer continue to operate his margin account, and to demand a return of his money and securities. The highly speculative character of the transaction required prompt notice to the defendants. He could not stand by and withhold deciding until it appeared whether the account would prove profitable or otherwise and in the meanwhile trade on the account at the expense of the defendants. We hold, on this record, that the plaintiff by his unreasonable delay lost any right to rescind the agreement and recover what he had paid to the defendants. There was no error in directing verdicts for the defendants upon the fourth and fifth counts. *Matthews* v. *Fuller*, 123 Mass. 446. *Metcalf* v. *Williams*, 144 Mass. 452. *Snow* v. *Alley*, 144 Mass. 546. *Marston* v. *Singapore Rattan Co.* 163 Mass. 296. *DeMontague* v. *Bacharach*, 181 Mass. 256. *McKinley* v. *Warren*, 218 Mass. 310. *McNulty* v. *Whitney*, 273 Mass. 494. *Labagnara* v. *Kane Furniture Co.* 289 Mass. 52. *Forman* v. *Hamilburg*, 300 Mass. 138. *Leviten* v. *Bickley, Mandeville & Wimple, Inc.* 35 Fed. (2d) 825. *Griffin* v. *Payne*, 133 Cal. App. 363. *Montgomery* v. *Van Ronk*, 328 Penn. St. 508. Am. Law Inst. Restatement: Contracts, § 483 (1).

The plaintiff next contends that, as alleged in the first and second counts, he was entitled to damages on account of the failure of the defendants to close out his account when he demanded that they do so. The plaintiff and the defendants had no agreement as to how long either would permit the margin account to continue. Either could at will bring about the termination of the account. A stockbroker who has undertaken employment by a customer to execute his orders upon a margin account owes a duty to the customer to carry out his directions to close the account. A stockbroker who has undertaken employment by a customer to carry his margin account and to execute his

orders to buy and sell securities as long as a proper margin is maintained by the customer ordinarily owes a duty to the customer to close the account when so directed by the customer, and failure or neglect of the broker to comply with such direction would make him liable for damages to the customer. *Stone* v. *Lothrop*, 109 Mass. 63. *Donovan* v. *Draper*, 268 Mass. 555.

We do not agree with the plaintiff that the evidence was such that the jury was required to find that the plaintiff made such demands upon the defendants. There are no express or definite findings of the auditor to this effect, and while he mentions a demand by the plaintiff on February 4, 1930, and also a demand and a refusal by the defendants on April 1, 1930, it is plain that he refers to a demand by the plaintiff for "the stocks then long in his account." Whether a demand for the stocks which he had delivered to the defendants as collateral might reasonably have been understood by the defendants as a demand to close the account was for the jury to determine. *Donovan* v. *Draper*, 268 Mass. 555, 560. The only witness who testified as to both demands was the plaintiff; and even if it appeared that his testimony was not contradicted, there was no error of law if the jury refused to adopt it. *Lydon* v. *Boston Elevated Railway*, 309 Mass. 205. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491.

The judge instructed the jury that the burden was upon the plaintiff to prove that he ordered the defendants to close his account and that they failed to do so. There is nothing in the plaintiff's exception to this portion of the charge. The plaintiff was suing for a breach of contract which he alleged consisted of the failure of the defendants to close the account after demand by the plaintiff that they do so. There was no dispute that the defendants did not close out the account on February 4, 1930, or on April 1, 1930, or within a reasonable time thereafter, and the question is whether such an order was given. The plaintiff could not recover under either the first or the second count unless he first proved that he ordered the defendants to close the account. Until that event occurred there was no

duty on the part of the defendants to close out the account. *Hapgood* v. *Shaw*, 105 Mass. 276. *Newton Rubber Works* v. *Graham*, 171 Mass. 352. *Aisenberg* v. *Royal Ins. Co. Ltd.* 266 Mass. 543.

The third count seeks damages for the sales of the plaintiff's securities on January 31, 1930, and February 1, 1930, without giving him any notice previous to these sales. The evidence was sufficient to prove that the defendants had assumed the obligation to give notice to the plaintiff before selling his securities as one of the terms of the agreement made with the plaintiff. Furthermore, the jury properly could have found that no notice had been given the plaintiff that the defendants intended to make these two sales. If the sales were unauthorized because the notice required by the agreement was not given, the plaintiff could not maintain an action for conversion. He did not have an immediate right to possession of the securities. Title to the securities was in the defendants. *Chase* v. *Boston*, 180 Mass. 458. *Palley* v. *Worcester County National Bank*, 290 Mass. 501. *Commonwealth* v. *Hull*, 296 Mass. 327. The plaintiff, however, could recover damages for sales made contrary to the terms of the agreement. The measure of damages was what it would have cost the plaintiff to replace the sold securities within a reasonable time after he acquired knowledge of the sales less the amount for which his account had been credited by the defendants as a result of the sales. *Hall* v. *Paine*, 224 Mass. 62, 65, 66. *Papadopulos* v. *Bright*, 264 Mass. 42, 47. *Dennett* v. *Wilmerding*, 291 Mass. 264, 270. This was the measure of damages established by law and was to be applied if the plaintiff had made out a case. The parties agreed as to the securities sold, the net proceeds credited to the plaintiff's account and the value of these securities on February 4, 1930. The judge, however, instructed the jury, subject to an exception by the plaintiff, that, if the plaintiff was entitled to notice and none was given, the plaintiff could recover only nominal damages if he was in no position to protect his account in the event that notice had been given to him. This was inaccurate. The rule of damages did not depend upon the financial ability of the plain-

tiff. He was entitled to be put in the same position he would have been in if no such sales had been made, and this is so whether or not he actually could have replaced the securities that had been sold. His damages were neither more nor less because he lacked financial ability to restore the securities to his account. *Kenerson* v. *Henry*, 101 Mass. 152. *Foote* v. *Smith*, 136 Mass. 92. See *Downey* v. *Union Trust Co.* 312 Mass. 405, 419. The jury must be assumed to have followed the instructions, *Commonwealth* v. *Morrison*, 252 Mass. 116; *Commonwealth* v. *Capalbo*, 308 Mass. 376, and, a verdict for nominal damages not having been returned, the plaintiff fails to show that he was prejudiced by this portion of the instructions. In such circumstances there was no reversible error.

The auditor, however, found that the agreement under which the securities were deposited and under which the securities purchased by the defendants were held as collateral was that the defendants would carry the account as long as it was adequately protected and margined, that they did not agree that they would not sell any of them without orders from the plaintiff or without first obtaining his permission or authorization, and that the defendants did not breach the agreement made.

The judge was right in instructing the jury that, in the ordinary contract with a stockbroker and in the absence of a special agreement, the broker had the right to sell if the margin was insufficient so that it was dangerous for the broker to continue the account. See *Covell* v. *Loud*, 135 Mass. 41. The plaintiff's exception to this part of the instructions cannot be sustained. The statement of the judge made no reference to any notice to sell and it could only have been understood as a general proposition for it was immediately followed by the statement that the plaintiff contended that he made a special agreement by which the defendants were not to sell without notice to him and the jury was left to determine whether that was the agreement between the parties.

The judge denied the plaintiff's sixteenth request calling for an instruction that the burden was upon the defendants

to prove that they had a right to sell the securities on January 31, 1930, and February 4, 1930.   It was admitted that these two sales were made.   The plaintiff seeks damages asserting there was a breach of his agreement with the defendants.   It is true that a broker must account to a customer for the securities delivered to or held by the broker as collateral to a margin account.   The broker has the duty of showing that he made sales or purchases in accordance with the instructions of the customer and that he has available for delivery to the customer, upon tender of the amount due, the securities that he purports to hold as collateral. *Lonergan* v. *Peck,* 136 Mass. 361.   *Greene* v. *Corey,* 210 Mass. 536.   *Crehan* v. *Megargel,* 235 Mass. 279.   *Golden* v. *Proctor,* 266 Mass. 407.   The principle of these decisions is not applicable to the instant case where the evidence is in conflict as to whether or not there was a special and unusual provision in the agreement, as the plaintiff alleged, that the defendants would not sell without notice to him.   The plaintiff in order to recover must show that this was one of the terms of the agreement and that the defendants had breached it by selling without notice to him.

The judge was not required to instruct the jury in accordance with the plaintiff's twenty-ninth request that in the absence of an agreement a broker is not entitled to sell out an account upon the depletion of the margin unless he first makes a demand for more collateral.   The plaintiff does not and could not successfully argue that his account was properly margined at the time of these two sales.   The specific complaint of the plaintiff was that he had no notice of the sales rather than that he had not received any calls for additional margin before these sales were made.   The judge, without any exception by the plaintiff, instructed the jury that the third count alleged that the securities were sold without notice to the plaintiff and that the plaintiff alleged that he had a special contract with the defendants "that nothing should be sold without notice to him."   The case was tried upon this theory, and whether the defendants had or had not made margin calls before these sales became immaterial on this count.

Neither was the plaintiff entitled to the granting of his request numbered 25b which, in substance, called for an instruction that, even if the defendants were under no obligation to give notice of any sales, they could waive the right to sell without notice by sending margin calls. As these two sales were the first sales made by the defendants without orders by the plaintiff, it is hard to see how the giving of margin calls would be a waiver of the right of the defendants to sell without notice. Moreover, as already pointed out, the specific claim of the plaintiff so far as this third count was concerned was that the sales were made without previous notice to him. Finally, even if the question of waiver was open, the plaintiff was not entitled as a matter of right to the granting of a request for instructions where a finding of facts different from or in addition to those upon which the request was based was permissible. *Barnes* v. *Berkshire Street Railway*, 281 Mass. 47. *Whitehouse* v. *Cities Service Oil Co., ante*, 108.

The fact that the statement in Whitney's letter to the plaintiff on February 1, 1930, that the sales were made in accord with the instruction of Strickland, the plaintiff's cotrustee, was incorrect did not estop the defendants from showing that the securities were sold because the account was undermargined, and there was no error in refusing the twenty-fifth request which called for an instruction as matter of law that the defendants were estopped to rely upon their right to sell because of the inadequacy of the margin. *Boston & Albany Railroad* v. *Reardon*, 226 Mass. 286. *Cleaveland* v. *Malden Savings Bank*, 291 Mass. 295.

The rulings of the judge striking out certain portions of the report of the auditor as the plaintiff requested and denying his request to strike out certain other parts of the report were free from error. The plaintiff was not entitled to have three letters from the defendants struck out as he conferred with Whitney as a result of each letter and the substance of these conferences appeared in evidence. A fourth letter [1] was admissible to show a demand for col-

---

[1] This letter was dated September 27, 1930. — REPORTER.

lateral at a time when the jury, notwithstanding the plaintiff's testimony that he had previously ordered the account closed, might find the account was still pending. Even if portions of the letters, all of which related to the margin account, were self-serving, *Pye* v. *Perry,* 217 Mass. 68; *Gibson* v. *McGuiness,* 288 Mass. 153, the plaintiff's exception saved to the admission of the entire letters without specific objection to such parts cannot be sustained. *Commonwealth* v. *Anderson,* 220 Mass. 142. *Commonwealth* v. *Perry,* 248 Mass. 19. *Commonwealth* v. *Mercier,* 257 Mass. 353. *Commonwealth* v. *Selesnick,* 272 Mass. 354. *Commonwealth* v. *Powers,* 294 Mass. 59. Wigmore, Evidence (3d ed.) § 18.

There is nothing in the other exceptions calling for any further discussion.

*Exceptions overruled.*