Lu, John T., J.
AMENDED MEMORANDUM OF DECISION AND ORDER ON POST-TRIAL MOTIONS[3] INTRODUCTION
The plaintiff, Shirley M. Bachini (Bachini), brought this case against the defendants, A.G. Edwards and Daniel R. Santanello, individually and as an investment broker of A.G. Edwards (Santanello), to recover money the defendants invested on behalf of her son.
After trial, the parties filed various post-trial motions. After considering the parties’ arguments and the evidence presented at trial, the court denies the plaintiffs motions for judgment notwithstanding the verdict, for additur, and to amend the verdict. The jury’s verdict for the defendants on the negligent misrepresentation and fraud claims were reasonable in light of the evidence because the jury could have found that the defendants’ alleged misrepresentations were not actionable opinions or that Bachini did not reasonably rely on the information Santanello provided to her. On the claim under the Uniform Securities Act, G.L.c. 110A, §410, the jury could reasonably have credited Santanello’s testimony and found that he did not make any misrepresentations or omissions of material fact that were necessary to make his statements not misleading to Bachini.
On Counts I (breach of contract) and II (breach of fiduciary duty), the court concludes that the defendants met their burden of proof on the affirmative defense of ratification. The court allows the defendants’ motions for judgment notwithstanding the verdict, to set aside the verdict, and to amend/clarify the verdict, because the jury’s finding that Bachini ratified her investments bars her recovery on Counts I and II.
On Bachini’s G.L.c. 93A claim (Count VII), the court concludes that the defendants did not engage in any unfair or deceptive acts or practices in their dealings with Bachini. Santanello acted negligently in failing to accurately determine Bachini’s risk tolerance, but this negligence did not rise to the level of an unfair or deceptive act in violation of Chapter 93A. Judgment shall enter for the defendants on Count VII.
BACKGROUND
In June of 2000, Bachini invested $70,000.00 through Santanello, the Vice President and Co-Branch Manager of A.G. Edwards in Peabody. The funds were part of the proceeds of a lawsuit brought by Bachini on behalf of her minor son, Joseph, who was injured by an adverse reaction to a vaccine.
On behalf of Bachini, Santanello invested in a mutual fund and three unit trusts: $20,000 in Goldman Sachs Trust Internet Toll Keeper, $15,000 in FT Internet Growth Portfolio No. 10, $15,000 in Worldwide Wireless First Trust Series Portfolio 415, and $20,000 in the Nuveen Legacy Five-Year Portfolio.
Bachini’s technology investments were eventually severely reduced in value by the “Internet bubble burst,” which began in March of 2000. By October of 2000, Bachini’s account was down from $73,402.57 to $68,718.48, about $1,200.00 from the original $70,000 invested.
Bachini testified at trial that she requested the money be invested conservatively. Santanello testified that Bachini did not state that she wanted only conservative investments and that she could not take risks. Santanello noted on Bachini’s intake card that her investments were “growth aggressive.” The account statements that Bachini received until March of 2001, however, indicated that her investments were “growth conservative.”
Around October 18, 2000, Bachini found out that her investments were more aggressive and riskier than she had thought.
Beginning on October 19, 2000, Bachini and her husband called A.G. Edwards. Bachini spoke by telephone to Padraic Murray (Murray), an A.G. Edwards customer-service representative, and said that she was unhappy with her investments and that they were more aggressive than she wanted. Bachini testified that she initially told Murray that she wanted the funds to be sold as soon as they reached $70,000.00, but later decided to hold onto the investments based on the advice of Santanello.
The value of Bachini’s investments continued to decline, and on August 6,2002, Bachini liquidated her account, which had a balance of $15,251.92.
Bachini filed suit on May 23, 2003. Trial began on June 7, 2007 and on June 26, 2007, the jury returned a verdict in the form of answers to special questions. On Bachini’s breach of contract claim (Count I), the jury found for Bachini and awarded $18,636.00 in damages. The jury also found that Bachini ratified her investments by choosing to remain in them, and that she failed to mitigate her damages. The jury reduced Bachini’s damages by $17,136.00 for her failure to mitigate for a total award of $1,500.00. The jury also *194 found that Bachini did not waive her right to recover and was not estopped from making her claims.
On Bachini’s breach of fiduciary duty claim (Count II), the jury found that the defendants breached their fiduciary duty to Bachini and awarded $18,636.00 in damages. The jury also found, however, that Bachini ratified her investments and failed to mitigate her damages. The jury also reduced Bachini’s damages on this Count by $17,136.00 for her failure to mitigate. The jury did not find that Bachini waived her right to recover or was estopped from bringing this claim.
On Counts IV and v. for negligent and fraudulent misrepresentation, the jury found that the defendants did not make a false statement to Bachini regarding a fact that a reasonable person would consider important to the decision that Bachini was about to make.
On Count VI for violation of G.L.c. 110A, §410, the jury found that the defendants did offer to sell a security in Massachusetts, but that the defendants did not make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading.
DISCUSSION
I. Standards
A. Motion for Judgment Notwithstanding the Verdict
A party who has previously moved for a directed verdict and been denied may then move for judgment notwithstanding the verdict “[n]ot later than 10 days after entry of judgment.” Mass.R.Civ.P. 50(b). Judgment notwithstanding the verdict “should be granted ‘cautiously and sparingly,’ and should only be granted if the trial judge is satisfied that the jury ‘failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.’ ” Netherwood v. Am. Fed’n of State, County & Mun. Employees, Local 1725, 53 Mass.App.Ct. 11, 20 (2001) (quoting Wright & Miller, Federal Practice & Procedure §2524, at 542 (1995), and Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992)). When deciding a defendant’s motion for judgment notwithstanding the verdict, “the judge’s task, ‘taking into account all of the evidence in its aspect most favorable to the plaintiff, [is] to determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the plaintiff.’ ” DeSantis v. Commonwealth Energy Sys., 68 Mass.App.Ct. 759, 762 (2007) (quoting Totsi v. Ayik, 394 Mass. 482, 494 (1985)).
B. Motion to Amend the Verdict/Motion for Additur
“[R]ule 59(e) is designed to correct judgments which are erroneous because they lack legal or factual justification.” Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm’n, 394 Mass. 233, 237 (1985). An ad-ditur is appropriate:
only when [the trial judge] concludes that the verdict is sound except for inadequacy of the amount and the inadequacy is such as to descend to the level of unreasonableness. An unduly slim verdict, however, may signal the existence of other defects in the work of the jury, or mistakes by the judge. In such a case additur would not be appropriate, and a simple new trial would be called for.
Freeman v. Wood, 379 Mass. 777, 785-86 (1980). The court has considerable discretion in ruling on a motion for additur. Tilton v. Union Oil Co. of Cal., 64 Mass.App.Ct. 115, 119 (2005), rev. denied, 445 Mass. 1104 (2005).
II. Defendants’ Motions
The Defendants move under Mass.R.Civ.P. 50(b) for judgment notwithstanding the verdict on Counts I and II, or in the alternative, to amend or clarify the judgment under Mass.R.Civ.P. 59(e). The Defendants make two arguments for why they are entitled to judgment on Count II, breach of fiduciary duty. First they argue that the jury’s finding of ratification is a complete bar to Bachini’s recovery as a matter of law. Second they argue that Count II should also be set aside because no fiduciary relationship existed between Santanello and Bachini and even if it did, there was no evidence presented at trial that the defendants breached that duly. Because the issue on Count II is disposed of entirely by the jury’s finding of ratification, the court does not reach the defendants’ argument that Bachini failed to show the existence of a fiduciary relationship.
On Count I, the defendants argue that the jury’s finding of ratification also bars Bachini’s recovery for breach of contract. In the event that the court does not set aside the jury’s verdict on Count I, the defendants request that the court clarify the jury’s verdict on this count and declare that the verdict applies only against defendant A.G. Edwards and not against Santanello because there is no claim that Santanello was acting in his individual capacity.
A. Ratification
Ratification of an agent’s acts can be express or implied, and the principal generally must have full knowledge of all material facts. Blais v. Independence Inv. Assocs., Inc., Civil No. 2001-4484, 2005 WL 705836, *1 [19 Mass. L. Rptr. 57] (Middlesex Super.Ct. Feb. 7, 2005) (Murtagh, J.) (to prevail on affirmative defense of ratification or waiver, defendant must show that plaintiff investor had full knowledge of defendant’s deviation from his desired conservative portfolio strategy such that plaintiff ratified or waived objection to the higher risk stock transactions); Inn Foods, Inc. v. Equitable Co-Operative Bank, 45 F.3d 594, 597 (1st Cir. 1995) (applying Massachusetts law); Van Syckle v. C.L. King & Assocs., Inc., 822 F.Sup. 98, 104 (N.D.N.Y. 1993) (“Ratification of unauthorized trading occurs only when it is clear from all the circumstances that the customer intends to adopt the trade as his own. Knowledge of the pertinent facts and *195 the clear intent to approve the unauthorized action is a precondition to ratification.”).
The defendants are correct that an investor who is found to have ratified her investments is barred from recovering for losses on those investments. See, e.g., Krinsky v. Whitney, 315 Mass. 661, 667 (1944) (plaintiff investor lost his right to rescind the contract and get his money back based on allegations of fraud because he did not object within a reasonable time to the defendant’s selling his securities when he knew that the market was falling. The plaintiff “could not stand by and withhold deciding until it appeared whether the account would prove profitable or otherwise”); Nash v. J. Arthur Warner & Co., Inc., 137 F.Sup. 615, 616, 618 (D.Mass. 1955) (plaintiffinvestors could not recover under Securities Act and Securities Exchange Act or under the common law for breach of a duty because plaintiffs did not seasonably object to the transactions despite having knowledge of the transactions from confirmation slips and account statements); Ocrant v. Dean Witter & Co., Inc., 502 F.2d 854, 857-59 (10th Cir. 1974) (investor was barred from recovery based on breach of contract for losses from unauthorized investments where investor did not object to the investments for several months despite having received, but not read, monthly account statements indicating that the transactions had been made); Altschul v. Paine, Webber, Jackson & Curtis, Inc., 518 F.Sup. 591, 594 (S.D.N.Y. 1981) (investor who acquiesced in the management of his investments ratified the transactions conducted on his behalf and could not recover for investment losses); Ferguson v. Francis I. duPont & Co., 369 F.Sup. 1099, 1101 (N.D.Tex. 1974) (plaintiff was not entitled to recover for losses on unauthorized securities transactions because plaintiff ratified the defendants’ actions).
The jury here found that Bachini ratified her investments by choosing to remain in them; this ends the court’s inquiiy. As a matter of law, the jury’s finding of ratification is a complete bar to Bachini’s recovery on her breach of contract and breach of fiduciary duly claims. See Krinsky, 315 Mass. at 666-67 (no right to rescind contract where investor found to have ratified his investments); Carr v. Warner, 137 F.Sup. 611, 612, 614-15 (D.Mass. 1955) (plaintiff investor barred from seeking recovery for breach of contract, “breaches of a relation of trust,” and violations of the Securities Act where she ratified her investments); Gordon v. duPont Glore Forgan, Inc., 487 F.2d 1260, 1262 (5th Cir. 1973), cert denied, 417 U.S. 946, (investor “who knows of his broker’s breach of duty and takes no action will be barred from bringing suit”) (citing Hayden, Stone Inc. v. Brown, 218 So.2d 230 (Fla.Dist.Ct.App. 1969)); Herman v. T&S Commodities, Inc., 592 F.Sup. 1406, 1417 (S.D.N.Y. 1984). See also Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 18 (1997) (“Ratification relates back, and has the same effect, as a prior grant of authority by the principal to the agent”), cert. denied, 522 U.S. 1015; 12 Am.Jur.2d, Brokers §185 (2008) (“If proven, ratification is a complete defense to unauthorized trading by a broker”) (citing Elwood v. Mid State Commodities, Inc., 404 N.W.2d 174, 179 (Iowa 1987) (ratification bars investors’ recovery against broker on claims for unauthorized trading)); Alperin, Summary of Basic Law, §1.38, at 49 (2006) (“Once the affirmance has occurred, the principal, or ratifier, is bound just as if the agent’s original act had been authorized; the ratification relates back to the time the act was done”) (citing Restatement (Second) of Agency §82, cmt. c).
The jury found that Bachini ratified her investments, Bachini waived her right to rescind and is now barred from recovery on her breach of contract and breach of fiduciary duty claims. Her damages on those claims shall be reduced to zero.
II. Plaintiffs Motions
In her motions under Mass.R.Civ.P. 50(b), 59(e), and 59(a) for, respectively, judgment notwithstanding the verdict, to amend the verdict, and for additur, Bachini moves for exactly the same relief. The court will address her motions together in the interest of efficiency since they request the same relief for the same reasons.
A. Inconsistency of Verdicts on Counts I and II
Bachini argues that the jury’s finding of control under Count II, breach of fiduciary duty, is inconsistent with its damages award of $18,636 and its reduction of damages by $17,136 on Count I, breach of contract.[4] Bachini argues that the jury’s reduction of her damages on the breach of contract claim for her failure to mitigate is inconsistent with the jury’s finding on Count II that the defendants had control over the account and that Bachini reasonably relied on the defendants’ expertise. Bachini contends that as a matter of law, she is entitled to damages of $69,000, an amount which will put her in as good a position financially as if the defendants had not breached their contract by falling to make a proper suitability determination.
Because the court has determined that Bachini cannot receive damages on Counts I and II as a matter of law based on the jury’s finding of ratification, the court need not reach Bachini’s argument that the jury’s findings on Counts I and II are inconsistent.
The jury’s award and reduction of damages on the breach of contract claim are not inconsistent with the jury’s finding that the defendants breached their fiduciary duty. Based on the evidence, the jury could have found that the defendants breached the contract and their fiduciary duty owed to Bachini by investing in higher risk investments than Bachini wanted. However, the jury was also reasonable in limiting Bachini’s damages to those incurred before she knew that the investments were higher risk. In October of 2000, Bachini found out that her investments were more *196 aggressive, and could have sold her investments at that time to avoid further losses. By December, Bac-hini knew, from talking to Murray, that she could sell the investments to avoid losing more money. The jury could have found that the defendants did not have control over Bachini’s investments in the sense that they prevented her from selling them. Rather, Bachini could sell but instead chose to remain in the investments. The jury was entitled to assess the reasonableness of her decision to stay in the investments based on the advice of defendants. The juiy’s reduction of her damages because of her failure to mitigate damages by staying in the investments and not selling sooner was reasonable.
B. Defendants’ Failure to Meet Burden of Proof on Affirmative Defenses
Bachini argues that the defendants failed as a matter of law to prove her intent to ratify. Bachini again argues that she could not have ratified her investments because the defendants had control over them. Based on the evidence, the jury could have found that Bachini ratified her investments by not selling when she learned that the investments were higher risk. See Linkage Corp., 425 Mass. at 18 (“Where an agent lacks actual authority to agree on behalf of his principal, the principal may still be bound if the principal acquiesces in the agent’s action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts”).
On October 18, 2000, Bachini found out that her investments were more aggressive than she thought. She could have sold her investments to avoid further losses. By December, Bachini knew, from talking to Murray, that she could sell the investments to avoid losing more money. Bachini elected to remain in the investments. The jury could have found from this evidence that although Santanello “controlled" Bachini’s account in the sense that he owed her a fiduciary duty, this control did not prevent Bachini from selling her investments once she learned that they were aggressive. The juiy’s verdict reflects this analysis, as the juiy found that although Santanello owed Bachini a fiduciary duty, Santanello’s liability for breach of fiduciaiy duly had to be reduced because Bachini ratified her investments and failed to mitigate her damages.
Bachini also argues that the defendants did not meet their burden of proof on mitigation of damages. She argues that her efforts to mitigate were reasonable as a matter of law, because she called A.G. Edwards beginning in October of 2000. She also states that it was reasonable for her to rely on defendants’ optimistic financial reports and assurances that the market would turn around, particularly in light of the juiy’s finding that defendants breached their fiduciaiy duty.
The court need not reach this argument, as the juiy’s finding of ratification bars Bachini from recovering any damages on Counts I and II.
There was sufficient evidence to support the defendants’ affirmative defense of failure to mitigate damages. Thejuiy was reasonable in reducing Bachini’s damages due to her failure to mitigate beginning when she learned in October that her investments were not conservative. As previously explained, the finding that Bachini did not mitigate her damages is not inconsistent with the jury’s finding that the defendants breached their fiduciaiy duty; the jury could have found that the defendants breached their fiduciaiy duty by making higher risk investments than Bachini wanted and also could have reasonably found that despite defendants’ improper selection of investments, Bachini breached her obligation to mitigate damages once she learned about the level of risk of the investments.
C. Negligent Misrepresentation Claim
Bachini argues that the court should vacate the juiy’s finding for the defendants on Count IV for negligent misrepresentation, and enter judgment in her favor. Bachini argues that the defendants misrepresented, among other things, that her investments were appropriate for her circumstances, and that the market would soon turn around.
To recover on her claim for negligent misrepresentation, the plaintiff must establish that the defendants (1) in the course of their business (2) supplied false information when guiding the plaintiff (3) in her business transactions, (4) which caused pecuniary loss to the plaintiff (5) by her justifiable reliance on the information, and (6) defendants did so without exercising reasonable care or competence in obtaining or communicating the information. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 59 n.25 (2004). Statements of expectation, estimate, opinion, or judgment may not form the bases of a claim for misrepresentation. Zimmerman v. Kent 31 Mass.App.Ct. 72, 79 (1991).
Based on the evidence presented at trial, the juiy was reasonable in finding that the defendants were not liable for negligent misrepresentation. Not only could the juiy have found that the defendants’ alleged misrepresentations were inactionable opinions, expectations, or judgments, see id., but thejuiy also could have found that Bachini was not justified in relying on the information, as she received full prospectuses in the mail detailing the risks of her investments after the June 2000 initial meeting. The juiy also could have credited Santanello’s testimony that Bachini did not state at their June meeting that she wanted only conservative investments, that she could not withstand any risks, and that she needed the money for Joseph’s on-going needs. The court cannot disturb the juiy’s verdict where, based on the evidence, the juiy appears to have exercised “an honest and reasonable judgment in accordance with the controlling principles of law.” Netherwood, 53 Mass.App.Ct. at 20 (2001) (quoting Wright & Miller, Federal Practice & Procedure §2524, at 542 (1995), and Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 127 (1992)).
*197 D. Fraud Claim
Bachini argues that the court should vacate the jury’s finding for the defendants on Count V, fraud, and enter judgment in her favor.
To establish a claim for fraud, the plaintiff must show that the defendant “made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [her] damage.” Stolzoff v. Waste Systems Int’l Inc., 58 Mass.App.Ct. 747, 759 (2003) (quoting Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982)). The plaintiff must also show that her reliance on the misrepresentation was reasonable. Id. at 760. As with a claim for negligent misrepresentation, “[a] statement on which liability for fraud may be based must be one of fact; it may not be one of opinion, or conditions to exist in the future, or matters promissoiy in nature.” Id. at 759.
The juiy was warranted in finding that the defendants were not liable for negligent misrepresentation, the jury was also reasonable in finding that the defendants were not liable for fraud. In short, the jury could have found that the defendants’ alleged false statements were mere statements of opinion or predictions of future conditions. There was also no evidence presented from which the jury could infer that Santanello purposefully did not disclose his commissions to Bac-hini in order to deceive her, or that he made other material misrepresentations for the purpose of having her investment portfolio fail. The jury’s verdict shall stand.
E. Claim Under G.L.c. 110A, §410
Bachini argues that the court should vacate the jury’s finding for the defendants on her claim under the Uniform Securities Act, G.L.c. 110A, §410. Bachini argues that Santanello offered and sold securities to her by means of untrue statements of material fact or omissions of material fact. Bachini argues that Santanello stated that the investments were diversified when they were not and provided her with advice and materials that were inaccurate given the volatility of the high tech and Internet stock markets at that time. She also argues that Santanello violated the Act by failing to provide her with full prospectuses at the June 2000 meeting.
General Laws c. 110A, §410(a) (2) states:
Any person who . . . offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him . . .
In their answers to the special questions, the jury found on Count VI that the defendants did offer to sell a security in Massachusetts, but did not make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading. Bachini’s argument that Santanello made misrepresentations fails for the same reasons that her negligent misrepresentation and fraud claims fail. The jury was entitled based on the evidence to find that Santanello did not make any misrepresentations of material fact. Although Bachini’s expert opined that her investments were not diversified, Santanello testified that they were diversified. The juiy was entitled to credit Santanello’s testimony instead of Bachini’s expert.
Regarding Bachini’s contention that Santanello provided her with advice and information that was misleading and outdated in light of the Internet bubble burst of March of 2000, the juiy could have credited Santanello’s testimony that he informed Bachini of the risks of each investment, including that the Internet and wireless investments had the highest risk. To the extent that Bachini is arguing that Santanello’s assurances painted a more optimistic picture of the state of the stock market than was true in June 2000, puffery or sales talk regarding the likelihood of Bachini’s portfolio’s success cannot by itself form the basis for a claim under G.L.c. 110A, §410. See Marram, 442 Mass. at 57 n.24 (opinions or beliefs are generally not actionable unless they are inconsistent with facts known at the time the opinion or belief is stated).
Bachini also argues that the defendants violated the Securities Act by failing to provide full prospectuses at the time of sale. However, she cites to no case establishing this proposition. The district court case from the Southern District of Indiana that Bachini does cite, Pyle v. White, 796 F.Sup. 380, 387 (S.D.Ind. 1992), is not only not binding on this court, but also concerned the application of the Indiana Securities Act.
In Pyle, the court addressed whether the jury could consider the complete failure to deliver a prospectus in determining whether there was a violation of the Securities Act. Id. at 382-83. The court rejected the argument that the failure to provide full prospectuses was a per se violation of the Securities Act, and instead held that the failure is a factor that the juiy can consider in determining whether there has been a violation. Id. at 387. Even if Pyle was binding on this court, which it is not, Pyle would not change the outcome in this case because it did not hold that the failure to provide full prospectuses at the time of sale is a violation of the Securities Act. Rather the court held that the jury could consider this failure as a factor in its analysis. Id. at 386-87. Here, not only was the juiy able to consider the defendants’ delay in providing *198 the full prospectuses, In determining whether the defendants sold securities to Bachini, by means of an omission of information necessary to inform Bachini of the risks of the investment, but unlike in Pyle, in addition to providing Bachini with abbreviated prospectuses at the time of sale, the defendants mailed Bachini full prospectuses within a week of the sale.
The court does conclude that the jury acted reasonably, in finding that Santanello did not make a misrepresentation or omission of a material fact necessary to make the statements made not misleading. See G.L.c. 110A, §410(a)(2). The court will not disturb the jury’s verdict on the Securities Act claim.
III. G.L.c. 93A Claim
Bachini seeks damages against the defendants for violation of the Massachusetts Consumer Protection Act, G.L.c. 93A, §9. Bachini argues that Santanello committed unfair or deceptive acts by putting her son’s money in high-risk investments despite knowing that Bachini wanted conservative, low-risk investments and stating to Bachini that the investments were safe. She contends that Santanello: purposefully stated on her intake form that her investment obj ective was growth aggressive despite Bachini’s indication that she wanted conservative investments; misstated her previous investment experience and net worth on her intake card that led to an inaccurate suitability determination; and gained her trust, then advised her to purchase undiversified investments based on false assurances that the investments were safe.
With the agreement of the parties, the court reserved Bachini’s c. 93A claim at trial, and will now make its findings and rulings on this claim. In making its findings, the court is not constrained by the jury’s findings on the common-law claims, as the jury’s findings do not have a preclusive effect on the c. 93A claim. Chamberlayne Sch. & Chamberlayne Junior Coll. v. Banker, 30 Mass.App.Ct. 346, 354-55 (1991).
A. FINDINGS OF FACT
Based on all of the evidence presented at trial and reasonable inferences from the evidence, the court finds the following facts.
(1) Bachini is a teacher, with a bachelor’s degree and a master’s degree in education.
(2) In June of 2000, Bachini invested $70,000.00 with Santanello, the Vice President and Co-Branch Manager of A.G. Edwards in Peabody. At the time, Santanello had over seventeen years of experience as a financial consultant. The funds were part of the proceeds of a lawsuit brought by Bachini on behalf of her son, Joseph, who was injured by an adverse reaction to a vaccine. The $70,000 was a portion of the first $100,000 payment the Bachinis received; the Bachinis were to receive three more payments of $100,000 each before Joseph turned eighteen, as long as Joseph survived. Bachini was the court-appointed guardian of the proceeds.
(3) At their June 1, 2000 meeting, Santanello filled out an intake form (account card) on Bachini. Santanello went through the form generally with Bachini, and unintentionally put some inaccurate information in it. He checked off growth aggressive on the card and noted that Bachini’s net worth was $400,000 excluding residence. This figure was inaccurate as her net worth was significantly lower. The card also stated that the type of account was a guardianship and that Bachini had invested in stocks/bonds for the past ten years and in certificates of deposits (CDs) for fifteen years. Based on Bachini’s husband, William John Bachini’s, previous investment experience with another brokerage firm, Santanello recorded the information about Bachini’s experience with stocks and bonds correctly. However, Santanello incorrectly recorded Bachini’s prior experience with savings bonds as experience with CDs. Bachini did not have any experience with CDs. Bachini did not review the intake form at the meeting.
(4) The court credits Bachini’s testimony that she gave Santanello essentially correct information on her financial background.
(5) Bachini did not tell Santanello to, or want to invest the proceeds conservatively, did not tell him that she wanted to use the money over a period of fourteen years to fund Joseph’s college education and for his ongoing needs, and also did not tell him that she could not tolerate risk well.[5] She did not tell Santanello that she wanted “little more than a savings account because she didn’t know what the future would hold.”
(6) Santanello did not, however, seek to determine Bachini’s risk tolerance, which was very low. His failures to accurately determine Bachini’s risk tolerance and accurately record her financial information were unintentional and not based on an intent to deceive.
(7) Bachini did not explicitly discuss investing “conservatively” in mutual funds, but they did discuss “household names” such as GE and Home Depot, as well as more speculative investments in Internet, wireless, and “Tollkeepers.” The court credits Bachini’s testimony that she trusted and relied on Santanello when he told her that he would “take care of Joseph” and would put the money where he put his wife’s and children’s money.
(8) Bachini was an unsophisticated investor that wanted the potentially high returns of the investments Santanello championed without their unacceptable level of risk.
(9) Santanello explained to Bachini, in a general fashion, how he was going to set up the investments and where he was going to invest the money.
(10) Santanello thought, mistakenly, that the investments were somewhat diversified. He told Bac- *199 hini that she had specialty funds in wireless and the Internet, which he stated had the highest risk.
(11) Santanello did not fully disclose the risks of the investments which he did not fully appreciate because he himself was caught up in the Internet boom.
(12) Santanello provided Bachini with a folder containing marketing materials on the investment experience of A.G. Edwards compared to other investment brokers, which indicated that A.G. Edwards was top-ranked. Bachini also took home abbreviated prospectuses on some of the investments.
(13) Santanello did not inform Bachini, in any detail, of the commissions he would receive from the investments.
(14) On behalf of Bachini, Santanello invested in a mutual fund and three unit trusts: $20,000 in Goldman Sachs Trust Internet Toll Keeper, $15,000 in FT Internet Growth Portfolio No. 10, $15,000 in Worldwide Wireless First Trust Series Portfolio 415, and $20,000 in the Nuveen Legacy Five-Year Portfolio. Of the $70,000 invested, $30,000 was invested in wireless and Internet. The Nuveen Legacy Five-Year Portfolio was the more conservative of the investments. The technology investments were drastically affected by the “Internet bubble burst,” which began in March of 2000.
(15) Bachini’s intent was to broker the purchase of securities by the plaintiff and to achieve large increases in the securities’ value. Despite several significant errors, he did not intentionally deceive the Bachinis.
(16) Notwithstanding any labels attached to the investments by the defendants Santanello and A.G. Edwards, the investments were largely inappropriate for Bachini because of her lack of investment experience, perspective, and risk intolerance.
(17) The quarterly statement Bachini received from A.G. Edwards stated that the investments were “growth conservative.”
(18) Bachini received full prospectuses in the mail about one week after the investments were made.
(19) The value of the investments soon began to decline, and by October of 2000, Bachini’s account was down from $73,402.57 to $68,718.48, about $1,200.00 from the original $70,000 invested. On October 18, 2000, Bachini called Santanello and asked to see her intake form. A.G. Edwards did not provide her with the form.
(20) Around October 18, 2000, as a result of a conversation between William Bachini and his stockbroker, Shannon Smith, Bachini believed that her investments were very aggressive and high risk.
(21) Beginning October 19, 2000, Bachini and her husband called AG. Edwards. Bachini spoke by telephone to Murray, an A.G. Edwards customer-service representative, and said that she was unhappy with her investments and that they were more aggressive than she wanted. Murray reviewed the account-activity statements and contacted Santanello to find out why the account was labeled growth conservative when the intake form noted growth aggressive. Santanello told Murray that the information had not been inputted into the computer accurately. On October 25, Bachini told Murray that she wanted the funds to be sold as soon as they reached $70,000.00.
(22) Murray concluded, after conducting an investigation, that while some of the investments were aggressive, the investments on the whole were not overly aggressive.
(23) On December 20, when the account was down to $48,364.39, Murray told Bachini that she could sell to avoid losing more money. Murray told Bac-hini that A.G. Edwards was not going to return her full investment. During the investigation, as provided by A.G. Edwards policies, the Bachinis could not speak to Santanello and the Bachinis could not talk to Santanello.
(24) On January 10, 2001, Santanello visited the Bachinis at their home and advised them to stay the course and not sell because the Internet was not going away. The court does not credit the Bachinis’ testimony that Santanello told them that they could not sell the trust investments for five years. Santanello brought to the meeting a financial analysis he prepared on Bachini’s investments and other information on whether technology sectors would rebound.
(25) Bachini called Murray in January 2001 and told him that she was happy with Santanello’s explanation of the account and that she would remain in the investments.
(26) In March of 2001, Santanello met with the Bachinis at their home. Santanello brought a financial analysis he created on Bachini’s investments and advised them to remain in the investments.
(27) On March 8, 2001, Santanello changed the coding of Bachini’s account from “growth conservative” to “growth aggressive.” Bachini called Santanello after she received the notice of the change in coding on her account, and stated that she did not ask for this and wanted the account to be growth conservative.
(28) In February of 2002, Bachini went to A.G. Edwards and requested $3,000 from her account. $3,045.29 was sold from the Nuveen Legacy Fund on February 27, 2002.
(29) On August 6, 2002, Bachini liquidated her account, which had a balance of $15,251.92.
(30) On August 8, 2003, Bachini, through her attorney, sent the defendants a Chapter 93A demand letter seeking a full reimbursement of the *200 $70,000 invested minus the money Bachini received from selling a portion of her investment in February of 2002 and minus the amount left over when she closed her account.
(31) The defendants responded to Bachini’s demand letter on September 8, 2003 and denied any liability, but offered $9,500.00 in settlement of Bachini’s claim. Bachini did not accept the offer of settlement, and filed suit.
B. LEGAL DISCUSSIONS
General Laws c. 93A, §2(a) makes unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce.” “Courts have deliberately avoided setting down a clear definition of conduct constituting a violation of G.L.c. 93A.” Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983). “It has been held, generally, that for conduct to violate the standard of §2(a), (1) it must fall ‘within at least the penumbra of some common-law, statutory, or other established concept of fairness,’ (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman.” Wasserman v. Agnastopoulos, 22 Mass.App.Ct. 672, 679 (1986) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)), rev. denied, 398 Mass. 1105 (Oct. 30, 1986). Mere negligence is not a violation of c. 93A; however, a deceptive act resulting from a defendant’s negligence is. Linthicum, 379 Mass. at 388; Squeri v. McCarrick, 32 Mass.App.Ct. 203, 207 (1992).
Santanello and A.G. Edwards are engaged in trade or commerce, as they provide the service of selling securities in Massachusetts. See G.L.c. 93A, §1 (defining “trade” and “commerce” as including “the offering for sale . . . of . . . any security [as defined in G.L.c. 110A, §401 (k)]”).
Santanello made inaccurate assumptions about Bachini’s investment-risk tolerance that caused Bac-hini to be placed in investments that were much higher risk than she could tolerate. Although his actions and inactions were a contributing factor to Bachini’s losses, they did not rise to the level of unfair or deceptive acts or practices under c. 93A. Santanello did not accurately record Bachini’s experience with CDs, and also did not correctly record her net worth. Santanello did not gather an accurate picture of Bachini’s investment intentions. He did not seek to determine, other than in a superficial way, whether she needed the money in the long or short term, or otherwise determine her risk tolerance. This failure to determine Bachini’s risk tolerance was unintentional and resulted from Santanello’s negligence. It was also due, in part, to Bachini’s failure to inform him that she needed a small amount of the money for her son’s on-going needs and that she wanted the money to be invested conservatively (to the extent that she understood the degree of risk associated with “conservative” investments). Although they did discuss “household names” such as GE and Home Depot and other more conservative investments, Santanello informed Bac-hini that some of the money would be put in more speculative investments such as the Internet, wireless, and ‘Tollkeepers.” Santanello did not discuss in detail the risks of each investment, but Bachini was aware that some of her investments were not conservative.
Santanello’s initial recommendations for Bachini and advice to remain in the investments was based on his honest and reasoned judgment as a financial consultant that the market would turn around. Santanello was caught up in the Internet boom like many others, and believed that the market would rebound. Although it is unfortunate that Bachini suffered catastrophic losses, Santanello cannot be liable for these losses under c. 93A because he did not act unfairly or deceptively in serving as her investment broker. Liability under c. 93A does not lie in negligent acts standing by themselves. Squeri, 32 Mass.App.Ct. at 207 (negligent act by itself does not give rise to c. 93A liability; in addition there must be evidence that the negligent act was or resulted in an unfair or deceptive act). Because the evidence at trial revealed only negligent acts, failures to act, or mistakes that do not rise to the level of unfair or deceptive acts, Santanello did not violate c. 93A. Therefore, judgment shall enter for the defendants on this Count.
ORDER
The plaintiff, Shirley M. Bachini, as guardian of her son, Joseph J. Bachini, a minor’s, motion for judgment notwithstanding the verdict, motion for additur, and motion to amend the verdict are DENIED-, and the defendants, Daniel R. Santanello, Individually and as an investment broker of AG Edward’s, motions for judgment notwithstanding the verdict, to set aside the verdict, and to amend/clarify the verdict are ALLOWED. Bachini’s damages on Count I (breach of contract) and Count II (breach of fiduciary duty) shall be reduced to zero.
Final judgment shall enter for the defendants on Count VII for violation of G.L.c. 93A.

 The court amends its original decision by replacing, on page 17 in the first full paragraph, the word “unreasonably” with “reasonably." [Editor’s Note: The correction is to the paragraph that precedes the section titled “III. G.L.c. 93A Claim.”!

 The jury awarded Bachini $18,636 on Counts I and II. This represents the amount of money Bachini’s account was down by in December of2000, when Murray informed Bachini that she could sell the investments to avoid losing money.

 Bachini actually needed a small amount of the investment for her son’s ongoing needs but at the time of the meeting, she did not know how small her son’s legitimate need for funds from the settlement would be.